**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 17 2023

KEVIN P. WEIMER, Clerk
By: _____ Clerk

|  |  |  |
|---|---|---|
| CAMERON M. THIERRY, | : | |
| Plaintiff, | : | |
| v. | : | Civil Case No. (to be assigned by Clerk) |
| SERTA SIMMONS BEDDING, LLC, | : | **1:23-CV-0279** |
| Defendant. | : | |

### *PRO SE* EMPLOYMENT DISCRIMINATION COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Cameron M. Thierry ("Plaintiff" or "Mr. Thierry" hereinafter), *Pro Se*, and files this Employment Discrimination Complaint for Damages, and shows the Court as follows:

### I.   NATURE OF COMPLAINT

1.   Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981, et. seq. ("Section 1981").

2.   Conduct complained about in this lawsuit involves:

   (i)   Defendant's failure to promote Plaintiff

1

(ii) Plaintiff working under terms and conditions of employment that differed from similarly situated employees

(iii) Defendant's harassment and retaliation

(iv) Termination of Plaintiff's employment

3.     Experienced manufacturing industry consumer product goods CPA Mr. Thierry was tormented by corporate *giants* and *machines* set against him as he, through grit, vigorously built out a multitude of elaborate financial models for one of North America's largest bedding manufacturers, Serta Simmons Bedding, LLC ("Defendant" or "SSB" hereinafter). Whom (SSB) after which had Mr. Thierry *swiftly* and constructively discharged in July 2021 after his June 2021 request for his second promotion to *Senior Finance Manager* based on his incessant, stellar, and immaculate performance. A second promotion request coming after having surpassed a tussle for his (Mr. Thierry's) first *merited* promoted title to *Finance Manager of* SSB's largest and very significant revenue account *Mattress Firm*, because *even then* he did not fit the typical Corporate (Finance) *leadership* profile at SSB (majority white and believed to be heterosexual), yet SSB was desirous of extracting his talents. A second promotion request blocked by the *invisible wall of discrimination*, due to Mr. Thierry being a black (African American) and *openly* gay (homosexual) male in SSB's Corporate (Finance) environment. Just as proud of who he (Mr. Thierry) is as anybody should be.

2

## II.   ADMINISTRATIVE PROCEDURES

4.   Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff filed his charge of discrimination against Defendant with the EEOC on October 18, 2021; the EEOC issued its Notice of Right to Sue on October 24, 2022 [see Exhibit A - Admin].

5.   Plaintiff timely filed this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## III.   JURISDICTION AND VENUE

6.   Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1981.

7.   Defendant's headquarters is located within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §1981, venue is appropriate in this Court.

## IV.   PARTIES

8.   Plaintiff is a black (African American) and *openly* gay (homosexual) male citizen of the United States of America, and is subject to jurisdiction of this Court.

9.   At all times relevant Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

10.   Defendant is now and, at all times relevant hereto, has been a domestic for-

3

profit corporation engaged in an industry affecting commerce. During all times

relevant hereto, Defendant has employed fifteen (15) or more employees for the

requisite duration under Title VII. Defendant is therefore covered under Title VII

in accordance with 42 U.S.C. § 2000e(b).

11.    Defendant may be served with process through its registered agent at the

following addresses: Corporation Service Company at 2 Sun Court, Suite 400,

Peachtree Corners, Georgia 30092 and at 2451 Industry Avenue, Doraville,

Georgia 30360.

## V.    **FACTUAL ALLEGATIONS**

12.    On August 20, 2018, Plaintiff began employment for Defendant as a Senior

Financial Analyst in FP&A Management Reporting, at the then-Atlanta

headquarter office location of 3560 Lenox Road, Suite 1100, Atlanta, GA, 30326.

In May 2019 he moved to the new location of 2451 Industry Ave, Doraville, GA

30360, until around March 2020 when SSB began working remotely through Mr.

Thierry's termination on July 28, 2021.

13.    In his first position, Mr. Thierry was responsible for delivering management

and board of director level financial reporting to Defendant, and was instrumental,

making the following contributions, among other things:

(i)     Created balance sheet and cash flow bank projection models for

private equity owners and lenders (complete 3-Statement modeling)

4

    (ii)    Developed an external reporting deck with a net sales mix model and waterfall calculation, used to facilitate quarterly lender call discussions

    (iii)    Automated and enhanced internal management reporting tools, and added visual management concepts, completely revamping the monthly internal financial reporting deck

14.    In mid-October 2019, Plaintiff became aware of an opening on the Sales Finance team and applied, after the departure of the previous SSB (Senior) Manager of the Mattress Firm account, which was the Defendant's largest account, representing a significant portion of the total annual revenues.

15.    Defendant was mutually interested in Plaintiff for the Mattress Firm Sales Finance role, which had gone unfilled for quite some time.

16.    However, Plaintiff was met with contentious efforts from Defendant regarding *title level* and *pay* for the open position, responding with "both" to his then-Manager Cedric Tape's (SSB then-Manager of FP&A Management Reporting, black male and believed to be heterosexual, "Mr. Tape" hereinafter) question as to whether "money or title [was] more important to [him]." Conversation instructions believed to be provided to Mr. Tape by Terry Malone (SSB then-Senior VP of Finance - FP&A, white male and believed to be heterosexual), as Mr. Tape was new to SSB. Mr. Thierry also told his previous

FP&A Management Reporting Manager, and future Sales Finance colleague, Paul Bartingale (SSB then-Senior Finance Manager, white male and believed to be heterosexual, "Mr. Bartingale" hereinafter) he "would become a manger somewhere" if not at SSB, after Mr. Bartingale also met with Plaintiff to discuss *title level* and *pay* for the open position on the team.

17.    For his 2019 annual performance review Mr. Thierry received a 4 out of 5 rating, which was considered to be very stellar in comparison to peer performance at SSB, but was told during the awarding "not to expect that same rating next year" by his future interim Manager Chris Ward (SSB then-Sales Finance Director, white male and believed to be heterosexual, "Mr. Ward" hereinafter) during the review session, held with Mr. Ward and Mr. Tape.

18.    Nonetheless, in January 2020, Plaintiff transitioned into his *Sales Finance Manager of Mattress Firm* role, originally reporting to Mr. Ward, and soon thereafter to Zak Kennedy (SSB then-Sales Finance VP, white male and believed to be heterosexual, "Mr. Kennedy" hereinafter).

19.    In March 2020, Plaintiff began working remotely from home, due to the SSB's Coronavirus policy, until his employment termination on July 28, 2021, where he front-faced all meetings sitting in front of his large visible rainbow elephant Pride wall-painting.

20. From July 2020 to October 2020, Defendant began to roll-out a series of company-wide diversity initiatives and mandated diversity trainings, which not all SSB employees seemed to be in favor of, including the following diversity trainings [see Exhibit L]:

    (i)    Diversity in the Workplace

    (ii)   Coping with Civil Unrest

    (iii)  Fostering Inclusion in the Workplace

21. On January 14, 2021, after experiencing repeated instances of 1) not getting info timely, 2) info not being shared when shared with others, then being asked for immediate turnarounds and 3) team members withholding info on the Mattress Firm sales account; Mr. Thierry experienced an incident where Mr. Kennedy forwarded him an email he was left-off of, but included the rest of the Mattress Firm sales account team. The email was sent the day prior from SSB Mattress Firm Senior VP of Sales Jim Roberts (white male and believed to be heterosexual, "Mr. Roberts" hereinafter) to Defendant's leadership, reporting differing information from the requested financial updates Mr. Thierry provided to Mr. Roberts in advance, blind sighting him in this instance.

22. Early the next morning, Mr. Thierry responded to Mr. Roberts' forwarded email re-attaching the updated information, and sent another separate email that

7

morning, copying Mr. Kennedy, asking Mr. Roberts for "continued inclusion, for set-up for success, and not failure, on the job."

23.    Mr. Roberts immediately calls Plaintiff and sends him apology texts for excluding him on that email, saying he is "glad" Mr. Kennedy "caught it", and further states he will "create an email list" so that it does not happen again, after having worked closely together on the largest sales account team for a year at that point.

24.    Later that afternoon, Mr. Kennedy sent an email claiming he had not seen the note prior to the one-on-one session he held with Mr. Thierry just after the exchange, but adds "good feedback!" [see Exhibit B - Inclusion].

25.    Shortly thereafter, Plaintiff began experiencing severe computer performance degradation issues, submitting multiple SSB IT support tickets in regards to what became an ongoing matter starting as early as January 27, 2021. This activity seemed to be retaliatory to Mr. Thierry's email sent to Mr. Roberts in paragraph 22.

*[Plaintiff's first laptop replacement occurred in February 2021 due to the persistent laptop degradation issues]*

26.    Mr. Thierry's strange computer performance degradation issues ensued sporadically through mid-July 2021. Over this entire duration of approximately six months, Plaintiff continued to submit numerous help tickets through the

Defendant's IT support portal system, continuously citing a similar, or the same, phenomenon occurring. Even including attached recordings of incidents. A significant number of SSB IT support ticket requests and emails were submitted from January through July 2021 by Mr. Thierry, who had been informed by Mr. Kennedy that his co-workers had not been experiencing the same, or any similar, computer issues after he had inquired [see Exhibit C - IT].

27.    On March 2, 2021, during his annual performance review, Mr. Thierry asked Mr. Kennedy what he needed to work on for promotion (to *Senior Finance Manager* level) and was given advice to be *clearer on recommendations with justifications*, and to *strengthen his ability to influence*, to which Plaintiff surpassed delivery of as this Court shall see. Mr. Kennedy closed with expressing Plaintiff had a long runway at Defendant's organization.

28.    On March 25, 2021, three sales account leaders made discriminatory remarks by voicing negative connotations about the prior SSB Mattress Firm account Senior VP of Sales (black male and believed to be heterosexual). SSB Chief Sales Office Derek Miller (white male believed to be heterosexual, "Mr. Miller" hereinafter) says "what was that guy doing before" in a derogatory tone, which then became an inside joke between Mr. Miller, Mr. Roberts and SSB Mattress Firm then-Sales Director Mike Laney (white male and believed to be heterosexual, "Mr. Laney" hereinafter), as they all started laughing together about

9

the predecessor. This occurred at the start of a pressure smart and perfect sleeper product analysis review session with Mr. Miller presented by Plaintiff and Mr. Laney and prepared for in advance.

29. On April 22, 2021, Mr. Thierry rushed to urgent care due to a shooting pain in his wrist/arm he suffered while working, after experiencing approximately 3 months of continuous computer degradation issues impacting his ability to perform despite deadlines. Plaintiff then personally purchased better home office equipment for working from home, as SSB was allegedly still debating providing such support to employees, but the computer degradation issues still ensued aggressively, and continued to impact him.

30. On May 4, 2021 Mr. Kennedy sent an email to SSB Sales Finance leaders stating "no action required" by Finance on the new account scorecard reports to be owned by the Sales teams.

31. Though at least July 13, 2021, Mr. Laney and Mr. Roberts conspired together to coerce Plaintiff into completing the account scorecard submissions on their behalf, and even gave the credit to Mr. Laney on June 10, 2021 for allegedly populating the document, as Mr. Roberts stated Mr. Laney "spent hours" getting it done, during the internal weekly Mattress Firm *Power 90* team call [see Exhibit D - Scorecard].

10

32.   On May 20, 2021, Plaintiff presented what appeared to be a contentious SSB *Daily Deals* promotional investment analysis to Mr. Kennedy, Mr. Roberts and Mr. Laney, yet Mr. Thierry received high accolades at the end during the closed session, including remarks that he "did a great job" and that the analysis "was very thorough" from the bunch - they also anxiously wanted to get the presentation in front of Mr. Miller.

33.   On May 21, 2021, Plaintiff *shouted himself out* on the SSB Mattress Firm team's cross-functional weekly *Power 90* meeting for his work efforts on the SSB *Daily Deals* promotional investment analysis, after Mr. Roberts and Mr. Laney interestingly and quietly held their tongues on relaying accolades just one day after, while still top of mind, in front of the wider team. A roundtable for shoutouts recognizing *good work* from the week was routinely hosted at the top of the *Power 90* team meetings.

34.   Neither Mr. Roberts or Mr. Laney seemed to appreciate Plaintiff shouting himself out, as Mr. Laney replied "oh, I guess we are shouting ourselves out now as well" in a flabbergasted tone. After this instance, a few weeks pass before shoutouts are hosted again during the weekly *Power 90* team calls.

35.   On May 27, 2021, Mr. Roberts sent an indirect email request for the completion of a task on the date it was due, seemingly testing whether Plaintiff could or would address it in a timely manner, given the original owner's (SSB

11

Mattress Firm Senior Sales Manager Mike Noone, white male and believed to be heterosexual, "Mr. Noone" hereinafter) absence. Mr. Noone then responded to the email request directly asking Plaintiff to complete the task in his absence. Mr. Thierry believes Mr. Roberts and Mr. Noone may have arranged prior to for Plaintiff to complete the task in Mr. Noone's absence, without consulting or informing Mr. Thierry until it was due, on the day of Mr. Noone's absence.

36. On June 2, 2021, Plaintiff was on a call with SSB IT support representative Bobby Dean (black male and believed to be heterosexual, "Mr. Dean" hereinafter), and noticed the sound from clicking around on his laptop on the other end of the phone, before a request was executed to connect to the laptop [see Exhibit C - IT]. *[Plaintiff's first laptop replacement received a ram installation update ("beefed up memory") by Mr. Dean on June 4, 2021 due to the persistent laptop degradation issues]*

37. On June 8, 2021, Mr. Miller responds to Mr. Roberts in an email thread regarding Plaintiff's SSB *Daily Deals* promotional analysis, stating this is "an opportunity for [Mr. Noone] to shine" [See Exhibit E - Shine].

38. On June 9, 2021, Mr. Noone forwards Mr. Thierry the email from paragraph 37 previously forwarded to him from Mr. Roberts, asking to set up a meeting for Plaintiff to walk him through the analysis, *from understanding the approach to the results*, as Mr. Noone was not involved in the analysis or *close to the performance*.

12

39.    That same day, Mr. Thierry sent an email to Mr. Kennedy outlining his contributions and comparison to peers (other SSB Sales Finance account leaders who reported directly into Mr. Kennedy), seeking promotion for performing at a level above his peers, who all had higher titles than him, and one recently promoted, Maureen Littell (*promoted* to SSB *then-Senior Sales Finance Manager*, white female and believed to be heterosexual, "Mrs. Littell" hereinafter). Plaintiff never received an emailed response from Mr. Kennedy (or Allan Leung, SSB then-new Senior VP of Commercial Finance, Asian male believed to be heterosexual, "Mr. Leung" hereinafter, who was copied).

The promotion request included the following key contributions made to the SSB Mattress Firm sales account by Mr. Thierry:

(i)    Presenting Mattress Firm executive level monthly reporting *externally*

      a.    Monthly Business Review ("MBR"), Finance section

(ii)   Presenting monthly Performance and Financial reviews internally (incl. Senior Leadership Team level materials)

      a.    Tying in Retail, Wholesale and KPI results with actions plans / recommendations (Performance Retail reports)

      b.    Account Scorecard/Drive Sales reports

      c.    T&N reporting

(iii)  Monthly and Ad Hoc Forecasting

13

a.   Above average accuracy

b.   Supportive analytical tools

c.   New PBI tool agility

(iv)   Account Data Analytics Leader

a.   Focus on accuracy

(v)   Insightful Ad Hoc Analyses and Modeling

a.   Daily Deals Promo

b.   Headboards (incl. agreement draft)

(vi)   Thoughtful Price Modeling

a.   Including delivering custom Pricing Actions with options

via creative tools and analyses

b.   Attention to detail

c.   Subsidy reductions

(vii)   New Product Launches

a.   Created informative schedules shareable across functions

b.   Timely updates

(viii)   Promotion Modeling Support

a.   iSeries Bundle

b.   Relief Bed Giveaway

14

Only a verbal response to the promotion request came from Mr. Kennedy later during upcoming one-on-one session as shown below [see Exhibit F - Promo].

40. The next day, June 10, 2021, Mr. Thierry was asked by Mr. Laney to cancel his hosted formal SSB sales account team monthly performance review session with the team, scheduled for that Thursday, and was further asked to "skinny down / rethink" the account MBR and presentation, which was referenced as a key contribution in the promotion request to Mr. Kennedy the day prior.

41. On June 16, 2021, Mr. Kennedy finally addressed Mr. Thierry's promotion request email during their weekly one-on-one session and told him a role would be "popping" for him and further said "to hold on and be patient."

42. That same day, Mr. Noone randomly made mention of Plaintiff being excluded from things, saying "I know how you get left off from things, or I know you are left off" during their meeting on work tasks.

43. On June 17, 2021, during Defendant's company-wide Black Employee Network kick-off meeting and Juneteenth Celebration, Mr. Thierry input his prior participation in a black affinity group at S. C. Johnson into the forum's open chat box. Shortly afterwards, Plaintiff received a weird LinkedIn invite from an alleged marketing employee candidate of the Defendant, appearing to be a black female, named Tiffany Hailey, inquiring how "SSB" (Defendant's internal acronym) is, claiming to be from S. C. Johnson.

15

44.     On June 18, 2021, Plaintiff sent a note to Mr. Dean and Mr. Kennedy about his computer performance issues aggravatingly persisting and proclaimed "*it is almost becoming unbearable*" after a rough week of pushing through the issues, however Plaintiff does not receive a response back from either of them regarding the matter [see Exhibit G - Computer Issue].

45.     On June 23, 2021, during new leader orientation for Mr. Leung (a new larger *Commercial Finance* team meeting held with HR), attendees were asked to share something about themselves that their team members didn't know about them, for an icebreaker. Mr. Thierry shared he had been getting his nails painted as a new hobby for about six months, and showed the team his nails. The response from the room was bleak, and then SSB then-Senior HR Generalist Angelica Bucki (white female and believed to be heterosexual, "Ms. Bucki" hereinafter) asked if Mr. Thierry's nails were "*neon*." Plaintiff confusingly responded stating "I guess they are kind of "*neony*." They were actually rainbow colored nails, matching Mr. Thierry's visible rainbow elephant Pride wall-painting.

46.     On June 30, 2021, Mr. Thierry met with Mr. Kennedy for his mid-year performance review session, where Plaintiff reiterated and elaborated on his contributions made from the original promotion request email sent in paragraph 39. Interestingly, Mr. Kennedy made it a point to comment on the Defendant's "diversity initiatives and trainings" during the review, stating it's "unfortunate the

events that led to educating", amongst the following additional comments Mr.

Kennedy made in regards to Mr. Thierry's performance:

(i)     Stated he's only seen "progression, no regression" in
        Plaintiff's performance

(ii)    Stated Plaintiff was doing "incredibly well"

(iii)   Stated SSB Mattress Firm Finance account role will stay at a manager
        level

(iv)    Stated there is a potential opportunity for promotion for
        Mr. Thierry in the near short term - given some role "popping"

(v)     Stated Plaintiff had "balls" for sending his promotion request email,
        that it "did not go unread", and that it went on further to "force some
        conversations to happen"

(vi)    Stated Mr. Thierry "won't be CFO at SSB"

47.     On July 1, 2021, Plaintiff emails Mr. Kennedy, copying SSB then-VP of

Human Resources Mairo Akpose (black female and believed to be heterosexual,

"Ms. Akpose" hereinafter), asking him why Mr. Thierry "would not" be able to

attain the CFO role at SSB, to which Mr. Kennedy responds saying he allegedly

*meant to say* a CFO opportunity "may" not come at SSB for Plaintiff [see Exhibit

H - Mid-Year].

17

48.     On July 6, 2021, during a meeting on a SSB marketing diversity initiative, Jennifer Nickell (SSB Senior Manager of Customer Marketing, white female and believed to be heterosexual, "Ms. Nickell" hereinafter) scheduled a meeting with Mr. Thierry and Mr. Laney to discuss Mattress Firm promotions to present to SSB leadership for finalization. One promotion was targeted towards the Hispanic market for a new dual feel mattress in a box product. Mr. Laney continuously questioned why SSB was offering a new technology and targeting only one demographic group (Hispanics), and he kept pressing Ms. Nickell on it during the meeting, saying it should be opened up to target all demographic groups in advertising, despite research shared suggesting Hispanics would be most interested in the new bed technology. Ms. Nickell began struggling with further explaining the demographic selection, as Mr. Laney kept pressing on about it.

49.     On July 9, 2021, during the COGS review for his mid-year forecast submission, Mr. Thierry once again began experiencing aggravated computer degradation performance issues from another flare up.

50.     On July 13, 2021 Mr. Thierry submitted another IT support ticket and emailed Mr. Kennedy and Mr. Dean regarding the reoccurring aggravated computer performance degraded state, proclaiming he was "*out of commission*" and *could no longer work under the current conditions*, to which neither respond regarding the matter [see Exhibit G - Computer Issue].

18

51. On July 14, 2021, Mr. Dean called Mr. Thierry to confirm an SSB IT support ticket was submitted in regards to paragraph 50, and mentioned he was backed up, but that someone would get back to me soon.

52. On July 15, 2021, Mr. Thierry phones-in for his weekly one-on-one session with Mr. Kennedy, who asks him "what happened with his computer" and if he "got a new one yet or anything", days after key forecast deliverables were being missed. Despite Plaintiff expressing the state of his adverse working conditions, Mr. Kennedy asks Mr. Thierry to "still try to get some forecast deliverables done."

53. On July 16, 2021, Mr. Kennedy texted Mr. Thierry that Mrs. Littell would be *randomly* reaching out on Mattress Firm dealer expenses for the mid-year forecast, and further asks "how he could help" with Plaintiff's computer issue. Mr. Thierry responds again requesting a new computer to be delivered in order to get back into action and expedite work. Mr. Kennedy then ceases further communication on the matter.

54. On July 17, 2021, Mr. Kennedy texted Mr. Thierry to follow-up on meeting with Ms. Littell, to which Plaintiff responded he had exchanged texts with her, however, Mattress Firm dealer expenses were not in a *hand-off* state given the persistent computer degradation issues as indicated, and further reaffirmed his confusion for the "inaction" on Mr. Kennedy's part regarding his computer issues.

*[Plaintiff submitted his EEOC inquiry on July 19, 2021]*

19

55. Not until July 19, 2021, did Mr. Kennedy finally send an email to Mr. Dean asking if Mr. Thierry's computer issue had been identified, and further inquired at what point a new machine would be the solution. SSB IT Manager Akeina Parris (black female and believed to be heterosexual) also declared she was stepping in to intervene and review the *case*.

56. From July 21 to July 23, 2021, Mr. Thierry exchanged emails with SSB IT support staff and Mr. Kennedy re-elaborating the whole computer issue experience. SSB IT support staff says they will work to understand *the root cause*, asks Mr. Thierry to be patient as the *unknown problem* persists, and asks for approval on replacing his laptop. Mr. Kennedy finally approves the issuance of the second new laptop for Plaintiff during the email exchanges also [see Exhibit G - Computer Issues].

57. On July 22, 2021, Ms. Bucki called Mr. Thierry around 9:30am, but the call from the unfamiliar number was missed - with no message received on the phone (voicemail or text). Around 2:00pm Mr. Thierry discovers Ms. Bucki also called his two emergency contacts (mother and sister) around 1:30pm, stating "SSB was concerned" and that they "[had] not been able to get ahold of [him] for some time." Plaintiff then has a call with Ms. Bucki around 3:00pm after his family alerts him to what seemed to be strange and bizarre behavior, as Mr. Thierry had been in

20

continuous communications with co-workers during the duration of his computer device being down, and had been informing them of the situation accordingly.

58. During the call Mr. Thierry stated he is "unsure why HR is involved or why they are looking for [him], as if [he] [has] been missing." Ms. Bucki states "people have not been able to get ahold of [Mr. Thierry]", and also asks him "if [he's] interested in [the Employee Assistance Program]", or "EAP", to which Plaintiff confusingly responds inquiring if she is referring EAP to him "for [his] arm incident" from April 2021 in paragraph 29. Mr. Thierry also inquired about any SSB policy on emergency contact usage, as Ms. Bucki's behavior was very harassing to Plaintiff. Ms. Bucki stated "there is no policy" and then proceeded to "walk" Mr. Thierry through her "reasoning", which did not seem logical to him, after she had finished stumbling through it.

59. Mr. Thierry later discovers Ms. Bucki had also sent an email inquiry to his personal email account at 9:29am on July 22, 2021, to which Plaintiff responds to after their call, recapping the events in paragraphs 57-58. She then responds confirming no SSB policy exists and that she just wanted to make sure Plaintiff was aware of EAP, despite Mr. Thierry's nearly three years of tenure with SSB.

60. Ms. Bucki had further advised Mr. Thierry to "connect with Mr. Kennedy" during the call, as if the two had not been in contact already. Nevertheless, Plaintiff immediately texted Mr. Kennedy after the email exchange with her, inquiring

21

about the events from paragraphs 57-58, to which Mr. Kennedy does not respond.

Mr. Thierry then shared texts of the communication thread between the two with

Ms. Bucki as requested [see Exhibit I - HR; Exhibit M - Contact].

61.     On July 23, 2021, Mr. Kennedy proceeded to *discretely* execute Mr.

Thierry's mid-year performance review appraisal, well after their June 30, 2021

review session held on the matter. Strangely, Plaintiff does not receive the standard

notification from the SSB Success Factors HRIS platform that the mid-year

performance review was *updated with manager comments*, so the written appraisal

was not discovered by Plaintiff until July 27, 2021 after receipt of the second new

laptop on July 26, 2021 [see Exhibit H-Mid-Year].

62.     In the mid-year performance review appraisal, Mr. Kennedy:

     (i)     Claimed Mr. Thierry's laptop was "not working how [he'd] like"

     (ii)    Claimed "problems started in early July with [Mr. Thierry] not being

        available", *contradicting his July 21, 2021 email* then stating only a

        4 day related duration being impacted

These manager comments were not discussed with Plaintiff, nor was he made

aware of them at all, prior to discovering the inclusions in his mid-year

performance review appraisal.

63.     Also on that Friday, July 23, 2021, Mr. Dean texts Mr. Thierry to change his

password to a temporary one in preparation for the second new laptop, and makes

delivery arrangements, with the new laptop arriving on Monday, July 26, 2021, and it is delivered accordingly. Plaintiff promptly notifies Mr. Kennedy, SSB HR and IT support staff of the delivery [see Exhibit C - IT].

64.    On July 26, 2021, Mr. Thierry schedules a touch point with Mr. Kennedy for 3:00pm, where he is scolded and blamed for "being unavailable", to which [he] disagrees, stating his continuous contacts made and further professing the inaction on Mr. Kennedy's part in approving a second new laptop. Mr. Kennedy then proceeded to "welcome" Plaintiff back, and says they will just treat the "whole thing as a blimp" and that Mr. Thierry does "really good work." Mr. Kennedy closes with saying he will follow-up with a list of priorities.

65.    The emailed list of priorities is sent to Mr. Thierry after 6:00pm, it is extensive, and it imposes unreasonable deadlines. It also throws blame at Plaintiff again for being unavailable and further states he has "to rebuild trust with business partners." Mr. Thierry responds copying SSB HR and reaffirming defenses in paragraphs 57-59, while stating he will follow-up with reasonable deadlines the next day. No further responses are received, and the proposed deadlines on priorities are emailed by Plaintiff the following day [see Exhibit J - Priorities].

66.    On July 27, 2021, Mr. Thierry logs into SSB Success Factors HRIS platform to review his development goals, and discovers Mr. Kennedy had finally entered manager comments in his mid-year performance review appraisal on July 23, 2021,

23

during his computer fiasco, after hosting their review session nearly a month prior, and a day after Mr. Kennedy connected with SSB HR on the situation.

67. In his manager comments, Mr. Kennedy used the mid-year performance review appraisal forum to berate Mr. Thierry over the two-week computer fiasco, stating "[Plaintiff] has lost trust" with business partners, and also claimed inaccurate instances of unavailability. All very different comments as compared to the positive remarks made to Plaintiff on June 30, 2021 in the mid-year performance review session from paragraph 46. Again, the manager comments were not discussed with Plaintiff prior to their inclusion in his appraisal.

68. After this discovery, Mr. Thierry immediately emails Mr. Kennedy and copies Ms. Bucki, Ms. Akpose and SSB then-Executive Senior VP of HR Dan Goldblatt (white male and believed to be heterosexual, "Mr. Goldblatt" hereinafter), stating his disturbance regarding the situation and requesting the manager comments be updated to reflect truth, while also reiterating Mr. Kennedy's cause of the delay due to his inaction on, and/or ignoring of, the computer issue requests along the way. A requested update on his promotion to Senior Finance Manager was also included, and Mr. Thierry further questioned never receiving the SSB Success Factors HRIS platform notification for the mid-year performance review appraisal update after Mr. Kennedy entered his manager comments on July 23, 2021 [see Exhibit I - HR].

24

69.    Mr. Thierry then sent a text to Mr. Kennedy and Ms. Bucki requesting the

email in paragraph 68 be addressed, but received no response. Mr. Thierry follows-

up with another email just to his SSB HR business partners that were copied on the

email in paragraph 68, inquiring on SSB HR intervention to ensure *the right thing*

is done, having lost trust after realizing the concealed mid-year performance

review appraisal actions. Ms. Akpose agrees to meet directly with Plaintiff the

following day, July 28, 2021 at 8:30am, and requested he stop sending emails.

70.    On the morning of July 28, 2021 Mr. Thierry meets with Ms. Akpose, and

she *suggests he cannot go further* in SSB's organization in the following

paraphrased dialogue exchange excerpts:

| Ms. Akpose: | *"How do you expect to go forward not trusting your boss* |
| | *or HR, and with your business partners lying on you?"* |
| Plaintiff: | *Returns the question to her*, as she was HR, and inquired |
| | further with: |
| | *"Are you saying I can't go forward [in Defendant's* |
| | *organization]?"* |
| Ms. Akpose: | *"Don't do that Cameron, don't put words in my mouth."* |

Ms. Akpose then proceeds to lead the conversation towards, after having backed

Mr. Thierry *against the wall* to state it, whether Plaintiff and Defendant "should

**_find a way to_** go [their] separate ways" not long into the meeting. Ms. Akpose

25

immediately runs with the words "go our separate ways" by abruptly stating she accepts Plaintiff's "offer" to "go separate ways", effectively putting words in Mr. Thierry's mouth. She then hastily closes the meeting by saying she will follow-up soon, and quickly ends the call.

71.     Immediately thereafter, Ms. Akpose emails Mr. Kennedy, Mr. Goldblatt and Plaintiff stating Mr. Thierry is "leaving the organization", and says she will follow-up with him in 24 hours. Mr. Thierry responds within two minutes after Ms. Akpose's email was sent, clarifying that "[he] is not quitting", and that the two had "agreed to disagree", while further suggesting she "can fire [him] if [she'd] like." Plaintiff then follows-up the emailed response with a call, voicemail and text to Ms. Akpose reciting the clarification [see Exhibit I - HR].

72.     Mr. Thierry does not receive any further correspondences, and later that morning he is no longer able to log into SSB's network or any applications on his laptop.

73.     On July 29, 2021, Mr. Thierry received an email from Ms. Akpose stating his "resignation" had been accepted by Defendant as of July 28, 2021. Mr. Thierry responded disagreeing with the given "resignation" from his position, and stated he would seek counsel. A follow-up email is also sent to Ms. Akpose asking if she wanted another 24 hours to respond with a proper separation offer for Mr. Thierry, which also went unanswered [see Exhibit I - HR].

74.    During his tenure, Mr. Thierry endured additional discriminatory events or acts at SSB, including, but not limited to, those listed in Exhibit L.

75.    Ironically, prior to his *swift* dismissal, against all odds and circumstances, Mr. Thierry still managed to contribute the following under his responsibilities held for delivering margins and financial performance reporting on Mattress Firm, the Defendant's largest business account:

    (i)    Built financial modeler to manage budget, improving forecast accuracy and supporting Power BI implementation across dealer network

    (ii)    Evaluated P&L profit driving actions and provided recommendations to team on opportunities, via effective financial modeling

    (iii)    Unlocked system and data capabilities to deliver the most insightful, timely and accurate data to management

    (iv)    Transformed dealer financial reporting with KPIs, driving actionable insights during internal/external monthly business reviews

76.    As shown above, for *at least* approximately six months, Defendant conducted continuous real-time monitoring of, and/or tortious interference with, Plaintiff's SSB work laptop(s) - *discriminatorily* extracting Mr. Thierry's talents for SSB's benefit, to the point of his physical injury, and  further on, up until it was unbearable for Mr. Thierry to continue working, due to the resultant degradation of

27

his device's performance. In response to Mr. Thierry's second promotion request *merited* by his continuous over delivery despite SSB's acts of discrimination, Defendant proceeded to wait *two weeks* before approving replacement of his second laptop, after the aggravated degradation to its performance made it unbearable to use, and still did not provide any plausible explanation for the *bizarre* activity. Instead, Defendant alleged Mr. Thierry was unavailable to business partners and had to rebuild trust. After bringing these transgressions to the attention of SSB Human Resources leadership, Mr. Thierry was *swiftly* discharged.

77.    Plaintiff also has reason to speculate on Alvarez & Marsal ("A&M"), consultants hired by Defendant to implement Power BI across their dealer network, participating in real-time computer monitoring of Mr. Thierry's laptop with Defendant, potentially part of the cause of degradation to Plaintiff's device performance, and/or the sharing of Mr. Thierry's working files with A&M for the Power BI dealer network implementation. An A&M junior consultant's closing remark, or maybe better now to be considered offered up career advice, to Plaintiff was, interestingly, that he "should not showcase all of his *excel skills* in his next role." Mr. Thierry may become more aware of this speculation after further investigation and/or during discovery.

## VI.    CLAIMS FOR RELIEF

### COUNT I

## RACE AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII

78. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

79. Defendant's actions in subjecting Plaintiff to ongoing race and sexual orientation discrimination constitute unlawful discrimination on basis of Plaintiff's race and sexual orientation in violation of Title VII.

80. Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

81. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect his status as an employee because of his race and sexual orientation.

82. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

83. Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1981

84. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

85. Defendant subjected Plaintiff to discrimination and harassment on the basis of his race and sexual orientation.

29

86. Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race and sexual orientation in violation of 42 U.S.C. section 1981.

87. The effect of the conduct was to deprive Plaintiff of economic opportunities, and otherwise adversely affect Plaintiff's status as an employee, because of his race and sexual orientation.

88. As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected his psychological and physical well-being.

89. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to his emotional health, and has lost back pay and front pay.

90. Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

91. Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

**WHEREFORE**, Mr. Thierry prays for judgment as follows:

- (i) General damages for mental and emotional suffering caused by Defendant's misconduct;

- (ii) Punitive damages based on Defendant's willful, malicious,

30

intentional, and deliberate acts, including ratification, condemnation
and approval of said acts;

(iii)   Special damages and/or liquidated damages for lost wages and
benefits and prejudgment interest thereon;

(iv)   Reasonable attorney's fees and expenses of litigation;

(v)   Trial by jury as to all issues;

(vi)   Prejudgment interest at the rate allowed by law;

(vii)   Declaratory relief to the effect that Defendant has violated
Plaintiff's statutory rights;

(viii)   Injunctive relief (but not reinstatement) of back pay and front pay,
and prohibiting Defendant from further unlawful conduct of the type
described herein; and

(ix)   All other relief to which he may be entitled.

Respectfully submitted the 14th day of January, 2023.

CAMERON M. THIERRY
1834 Drexel Blvd # 209
South Milwaukee, WI 53172
404-822-0336
cameron.thierry@gmail.com
PRO SE

Attorney for Plaintiff
Cameron M. Thierry

31

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

By signature below, I hereby certify that the foregoing was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1.

This 14th day of January, 2023.

CAMERON M. THIERRY
1834 Drexel Blvd # 209
South Milwaukee, WI 53172
404-822-0336
cameron.thierry@gmail.com
PRO SE

Attorney for Plaintiff
Cameron M. Thierry

**Exhibit A - Admin**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA [X] EEOC | 410-2021-05782 |

and EEOC

_State or local Agency, if any_

| Name _(indicate Mr., Ms., Mrs.)_ | Home Phone | Year of Birth |
|---|---|---|
| **MR. CAMERON M THIERRY** | **(404) 822-0336** | **1988** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5193 PEACHTREE BLVD, APT 1407, ATLANTA,GA 30341** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (_If more than two, list under PARTICULARS below._)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **SERTA SIMMONS BEDDING LLC** | **15 - 100** | **(404) 534-5000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2451 INDUSTRY AVE, DORAVILLE, GA 30360** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON _(Check appropriate box(es).)_

[X] RACE    [ ] COLOR    [X] SEX    [ ] RELIGION    [ ] NATIONAL ORIGIN

[ ] RETALIATION    [ ] AGE    [ ] DISABILITY    [ ] GENETIC INFORMATION

[ ] OTHER _(Specify)_

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-01-2021**    Latest **07-28-2021**

[ ] CONTINUING ACTION

THE PARTICULARS ARE _(If additional paper is needed, attach extra sheet(s)):_

**I was hired by the above employer in August 2018, as a Senior Financial Analyst. In January 2020, I was promoted to Manager. On June 9, 2021, I asked Zach Kennedy, Supervisor, for a promotion, but I was denied. On July 14, 2021, I experienced computer issues and was unable to complete my work through July 24, 2021. On July 28, 2021, I was constructively discharged.**

**I believe I was discriminated against because of my race (African-American), and sex (male/sexual orientation), in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Cameron M Thierry on 10-18-2021 07:01 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE _(month, day, year)_ |

A-1

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.   FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.   AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.   PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.   ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

A-2

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/24/2022

**To:** Mr. Cameron M. Thierry
1834 Drexel Blvd Apt 209SOUTH MILWAUKEE, WI 53172
Charge No: 410-2021-05782

EEOC Representative and email:   Michelle Wright
Investigator
michelle.wright@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2021-05782.

On behalf of the Commission,

Digitally Signed By:Darrell Graham10/24/2022

Darrell Graham
District Director

**Cc:**
Timothy J Holdsworth
Elarbee Thompson Sapp & Wilson, LLP
229 PEACHTREE ST NE STE 800Atlanta, GA 30303

Clara DeQuick
2451 Industry AveDoraville, GA 30360

Amy Doronio
2451 Industry AveDoraville, GA 30360

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 410-2021-05782 to the District Director at Darrell Graham, 100 Alabama Street, SW Suite 4R30Atlanta, GA 30303.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

**Exhibit B - Inclusion**

Case 1:23-cv-00279-MHC-JEM   Document 1   Filed 01/17/23   Page 42 of 135

 Gmail

Cameron Thierry, <cameron.thierry@gmail.com>

## FW: MFRM

1 message

**Cameron Thierry** <cthierry@sertasimmons.com>
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>

Thu, Jan 14, 2021 at 8:06 AM

- CT

   (m) 678.230.2309

**From:** Cameron Thierry
**Sent:** Thursday, January 14, 2021 8:05 AM
**To:** 'Jim Roberts (JRoberts@SertaSimmons.com)' <JRoberts@SertaSimmons.com>; Zak Kennedy <zkennedy@sertasimmons.com>
**Subject:** RE: MFRM

Would appreciate continued inclusion, Jim – for help with setup for success, not failure. Let me know if there are any issues.

I receive a text from you late last night, shortly following a forwarded note I am not included on that was not mentioned.

I am trying to do my job, with the limited resources available. Thank you.

Best,

- CT

   (m) 678.230.2309

**From:** Cameron Thierry
**Sent:** Thursday, January 14, 2021 7:49 AM
**To:** 'Jim Roberts (JRoberts@SertaSimmons.com)' <JRoberts@SertaSimmons.com>
**Cc:** Zak Kennedy <zkennedy@sertasimmons.com>
**Subject:** FW: MFRM

**Importance:** High

Hi Jim –

Reattaching the finance submission – the priorities slide + final budget do not reflect what was sent. As I informed during review meeting.

Best,

- CT

    (m) 678.230.2309

**From:** Zak Kennedy <zkennedy@sertasimmons.com>
**Sent:** Wednesday, January 13, 2021 9:35 PM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** FW: MFRM

**From:** Jim Roberts <JRoberts@SertaSimmons.com>
**Sent:** Wednesday, January 13, 2021 4:04 PM
**To:** Mike Laney <mlaney@SertaSimmons.com>; Michael Noone <mnoone@sertasimmons.com>; Rose Hudecki <RHudecki@SertaSimmons.com>; Andrew B. Kramer <akramer@sertasimmons.com>; Roger J. Rios <RRios@SertaSimmons.com>
**Cc:** Zak Kennedy <zkennedy@sertasimmons.com>; Steve Wohlert <swohlert@SertaSimmons.com>
**Subject:** MFRM

All,

Attached is a copy of the 2020 review and 2021 priorities deck we reviewed on Monday. I also attached a deck I prepared for Dave Swift this week for a call regarding MFRM coming up this week that is worth a read.

Achieving budget will not be a cake walk, but it is very attainable with all the activity we have going on and we are starting out on track in January. We need to keep thinking big though and target that stretch goal of $xxx million. That

may feel like a real stretch but as I laid out Monday we have the tools and opportunities to get there so let's stay focused and make this a rock star year for all of us.


Zak and Steve,


I wanted to share this with you as well to keep you in the loop and no doubt we will also be continuing to reach out for support to help achieve and exceed our goals.


Thanks


**Jim Roberts**
Senior Vice President of Sales

**Serta Simmons** Bedding

2451 Industry Avenue|Doraville, Georgia 30360

**Mobile:** (678) 464-3500
**jroberts@sertasimmons.com**

B-3





RE: MFRM

**Zak Kennedy**
To: Cameron Thierry

I had not seen this email prior to our one on one.
Good [feedback!
Zak

From: Cameron Thierry <cthierry@SertaSimmons.com>
Sent: Thursday, January 14, 2021 8:05 AM
To: Jim Roberts <JRoberts@SertaSimmons.com>; Zak Kennedy <zkennedy@sertasimmons.com>
Subject: RE: MFRM

Would appreciate continued inclusion, Jim – for help with setup for success, not failure. Let me know if there are any issues.
I receive a text from you late last night, shortly following a forwarded note I am not included on that was not mentioned.
I am trying to do my job, with the limited resources available. Thank you,

Best,

CT
(m) 678.230.2309

From: Cameron Thierry
Sent: Thursday, January 14, 2021 7:49 AM
To: 'Jim Roberts [JRoberts@SertaSimmons.com]' <JRoberts@SertaSimmons.com>
Cc: Zak Kennedy <zkennedy@sertasimmons.com>
Subject: FW: MFRM
Importance: High

Hi Jim –

Reattaching the finance submission – the priorities slide + final budget do not reflect what was sent. As I informed during review meeting



RE: MFRM

**ZK** Zak Kennedy
To: Cameron Thierry
Cc:
(m) 678.230.2309

**From:** Cameron Thierry
**Sent:** Thursday, January 14, 2021 7:49 AM
**To:** 'Jim Roberts (JRoberts@SertaSimmons.com)' <JRoberts@SertaSimmons.com>
**Cc:** Zak Kennedy <zkennedy@sertasimmons.com>
**Subject:** FW: MFRM
**Importance:** High

Hi Jim –

Reattaching the finance submission – the priorities slide + final budget do not reflect what was sent. As I informed during review meeting.

Best,

CT
(m) 678.230.2309

**From:** Zak Kennedy <zkennedy@sertasimmons.com>
**Sent:** Wednesday, January 13, 2021 9:35 PM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** FW: MFRM

**From:** Jim Roberts <JRoberts@SertaSimmons.com>
**Sent:** Wednesday, January 13, 2021 4:04 PM



**Exhibit C - IT**

















 **Gmail**

Cameron Thierry <cameron.thierry@gmail.com>

## FW: [External]:

1 message

**Cameron Thierry** <cthierry@sertasimmons.com>
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>

Mon, Jul 26, 2021 at 7:08 PM

**From:** Cameron Thierry
**Sent:** Wednesday, June 2, 2021 9:43 AM
**To:** Bobby Dean <bdean@SertaSimmons.com>
**Subject:** FW: [External]:

Hi Bobby –

Attached is the error I am getting when trying to log into Microsoft on my phone. Not sure if access needs to be granted to this device by SSB admins?

Best,

- CT

    (m) 678.230.2309

**From:** 6782302309@mms.att.net <6782302309@mms.att.net>
**Sent:** Wednesday, June 2, 2021 9:15 AM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** [External]:

7/30/21, 3:23 PM



**IMG_0040.jpg**
208K

C-10



cthierry@sertasimmons.com

## You cannot access this right now

Your sign-in was successful but does not meet the criteria to access this resource. For example, you might be signing in from a browser, app, or location that is restricted by your admin.

More details

**Request Id:** d39ec4df-9575-4153-a70c-6f1044b24203
**Correlation Id:** 971e5973-2d93-4a48-81ff-032bc405cc08
**Timestamp:** 2021-06-02T13:14:07.644Z
**App name:** Microsoft Intune Company Portal
**App Id:** 9ba1a5c7-f17a-4de9-a1f1-6178c8d51223
**IP address:** 24.125.135.107
**Device identifier:** Not available
**Device platform:** iOS
**Device state:** Unregistered

**Flag sign-in errors for review:** Enable flagging
If you plan on getting help for this problem, enable flagging and try to reproduce the error within 20 minutes. Flagged events make diagnostics available and are raised to admin attention.

Terms of use    Privacy & cookies    ...



FW: [External]:

CT    Cameron Thierry
      To  Bobby Dean                                              6/2/2021

      IMG_0040.jpg
      241 KB

Hi Bobby –

Attached is the error I am getting when trying to log into Microsoft on my phone. Not sure if access needs to be granted to this device by SSB admins?

Best,

CT
(m) 678.230.2309

From: 6782302309@mms.att.net <6782302309@mms.att.net>
Sent: Wednesday, June 2, 2021 9:15 AM
To: Cameron Thierry <cthierry@SertaSimmons.com>
Subject: [External]:



 **Gmail**

Cameron Thierry <cameron.thierry@gmail.com>

## FW: RITM0074324 has been submitted

1 message

**Cameron Thierry** <cthierry@sertasimmons.com>
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>

Wed, Jan 27, 2021 at 11:56 AM

- CT

    (m) 678.230.2309

**From:** SertaSimmons Service Desk <support@sertasimmons.com>
**Sent:** Wednesday, January 27, 2021 11:45 AM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** RITM0074324 has been submitted

—

**Serta**
**Simmons**
Bedding

Dear Cameron Thierry ,

A request RITM0074324 has been submitted to the Service Desk for the following;

Request Short Description: Request something you need to do your job

More Info: Generic Request

Variables:
  Request on behalf of this user = Cameron Thierry
  Employee Number = 100019295

C-14

Current Location = SSB Headquarters (Doraville)
Callback number = 404/534-5211
Manager = Zachery Kennedy
Please describe your issue / request. = Have been experiencing very slow processing
speeds this week. Mouse on screen drags very slowly. Not sure if there are any others
experiencing similar issues.

Regards,

SSB IT ServiceDesk

1-866-309-2626
Monday 6:00AM thru Saturday 5:00PM Eastern time

SSB IT Live Chat available Monday- Friday 8:00AM- 8:00 PM Eastern

End User Portal/Self Service

Ref:MSG3559872



RE: [External]:

**Cameron Thierry**
To  Bobby Dean; Akiena Parris; Angelica Bucki
Cc  Mairo Akpose; Zak Kennedy; Fred Benton

1:09 PM

Thanks, all – I am back in action!

Best,

CT

From: Bobby Dean <bdean@SertaSimmons.com>
Sent: Friday, July 23, 2021 12:03 PM
To: Akiena Parris <aParris@sertasimmons.com>; Angelica Bucki <abucki@SertaSimmons.com>
Cc: Mairo Akpose <makpose@SertaSimmons.com>; Zak Kennedy <zkennedy@sertasimmons.com>; Fred Benton <fbenton@SertaSimmons.com>; Cameron Thierry <cthierry@SertaSimmons.com>
Subject: RE: [External]:

Hello,

Here is the tracking info. for Cameron's new laptop.
FedEx Tracking# 774340762927  & Return Tracking# 791176887288



FW: [External]:

**Zak Kennedy**
To Cameron Thierry

← Reply   ← Reply All   → Forward   •••
Wed 7/21/2021 9:43 AM

Cameron-

The ball is in your court on how to proceed on this. An immediate response is expected as it seems that you are at a standstill until there is a path forward.

What is confusing is that you have not been joining meetings and responsive via phone/scheduled conference calls over the last 4 business days. At least doing that would alleviate some of the challenges and would have helped the group meet deadlines.

Zak

From: Akiena Parris <aParris@sertasimmons.com>
Sent: Wednesday, July 21, 2021 8:21 AM
To: Cameron Thierry <cthierry@SertaSimmons.com>; Zak Kennedy <zkennedy@sertasimmons.com>; Bobby Dean <bdean@SertaSimmons.com>
Cc: Fred Benton <fbenton@SertaSimmons.com>
Subject: Re: [External]:

Cameron/Zak,

Approximately six weeks ago we replaced your original device and upgraded your laptop to one of our more powerful devices in order to improve performance. We increased memory as well as your processing power. Most times we have found that with Excel issues the hardware is not the root of



RE: RITM0079341 has been submitted

ZK    Zak Kennedy
      To  Cameron Thierry

      You may have outstanding tasks for Zak Kennedy. Would you like to review now?
      See my tasks   Feedback on this suggestion

Not that I am aware of.
Work though it as best you can.
Thanks
Zak

From: Cameron Thierry <cthierry@SertaSimmons.com>
Sent: Tuesday, June 1, 2021 2:15 PM
To: Zak Kennedy <zkennedy@sertasimmons.com>
Subject: RE: RITM0079341 has been submitted

Also – has anyone else on the team been experiencing issues?

Best,

    CT
    (m) 678.230.2309

From: Cameron Thierry
Sent: Tuesday, June 1, 2021 2:04 PM

C-18



RE: Your incident INC0275728 has been resolved - My new laptop is now performi...

**CT**   Cameron Thierry
To  Bobby Dean
Cc  Zak Kennedy

4/7/2021

(i) You replied to this message on 6/18/2021 9:16 AM.

IMG_0037.3gp
163 KB

Hi Bobby –

I am having the same reoccurring issues – best explained by watching the attached video, which I will also post with
the new ticket. I have better video quality on my phone (can send to your cell if you'd like).

This is similar to what was witnessed by an IT rep during a service now call concerning the issue.

Best,

CT
(m) 678.230.2309

From: Bobby Dean <bdean@SertaSimmons.com>   C-19

All folders are up to date.   Connected to Microsoft Exchange

7:05 PM
7/26/2021

T14



C-20

**Exhibit D - Scorecard**



**FW: 2021 Account Scorecard Review File(s)**

ZK    Zak Kennedy
To  Paul Bartingale; Maureen L Littell; Chris Ward; Cameron Thierry

No action required

**From:** Zak Kennedy
**Sent:** Tuesday, May 4, 2021 9:37 PM
**To:** Seth Dittrich <sdittrich@SertaSimmons.com>; Jeff Ranweiler <jranweil@sertasimmons.com>; Sean Dever <SDEVER@sertasimmons.com>
**Subject:** RE: 2021 Account Scorecard Review File(s)

Jeff-

This email was forwarded to me at my request as I was receiving feedback from the finance team that they are being asked to help fill these out.
I have advised them to not assist in this effort as if that was an expectation then the template would have been filled out automatically for them.
Please reinforce that it is sales responsibility, and their responsibility only,  to fill this out with their outlook/actuals as I don't view this as something we would have been expected to get involved in.
Thanks

**From:** Seth Dittrich <sdittrich@SertaSimmons.com>
**Sent:** Monday, May 3, 2021 8:27 AM
**To:** Jim Roberts <JRoberts@SertaSimmons.com>
**Cc:** Jeff Ranweiler <jranweil@sertasimmons.com>; Sean Dever <SDEVER@sertasimmons.com>
**Subject:** RE: 2021 Account Scorecard Review File(s)

Jim



FW: 2021 Account Scorecard Review File(s)

ZK  Zak Kennedy
To  Cameron Thierry; Maureen L Uttrell; Chris Ward; Paul Bortingale

From: Seth Dittrich <sdittrich@SertaSimmons.com>
Sent: Monday, May 3, 2021 8:27 AM
To: Jim Roberts <JRoberts@SertaSimmons.com>
Cc: Jeff Ranweiler <jranweil@sertasimmons.com>; Sean Dever <SDEVER@sertasimmons.com>
Subject: RE: 2021 Account Scorecard Review File(s)

Jim,

This file will need to be updated by you and your team; April will be actuals and forecast for remaining months.

As for timing, I don't see a review time for MFRM.

Jeff – Can you provide Jim a due date.

**SETH DITTRICH**
Sales Ops. Sr. Business Analyst

**Serta Simmons** Bedding
2451 Industry Ave. | Doraville, GA 30360
**Office:** (404) 534-4923
**Cellular:** (770) 262-0532



FW: 2021 Account Scorecard Review File(s)

ZK   Zak Kennedy
To: Cameron Thierry; Maureen L. Littell; Chris Ward; Paul Bartingale

See below – this activity was meant for sales to execute
Thanks

From: Jeff Ranweiler <jranweil@sertasimmons.com>
Sent: Friday, May 7, 2021 6:30 AM
To: Zak Kennedy <zkennedy@sertasimmons.com>; Seth Dittrich <sdittrich@SertaSimmons.com>; Sean Dever <SDEVER@sertasimmons.com>
Cc: Steve Wohlert <swohlert@SertaSimmons.com>
Subject: RE: 2021 Account Scorecard Review File(s)

Zak,

As you can imagine for this first round there were many questions across the board which may explain why your team was getting pinged on this.

We set the expectation from Day 1 that it was Sales responsibility to fill out their outlook and we will continue to reinforce.

Jeff

From: Zak Kennedy <zkennedy@sertasimmons.com>

**Exhibit E - Shine**



FW: Daily Deals Review

Michael Noone

MNSM Daily Deals ROI Analysis 06.02.21.pdf
525 KB

**From:** Michael Noone <mnoone@sertasimmons.com>
**Sent:** Tuesday, June 8, 2021 1:50 PM
**To:** Jim Roberts <JRoberts@SertaSimmons.com>
**Subject:** RE: Daily Deals Review

Yes, I will set up a call. Can you send me what you shared with Derek?

**MICHAEL NOONE**
SENIOR MANAGER I SALES

Serta Simmons Bedding
2451 Industry Avenue I Doraville, GA 30360
Mobile: (570) 212-0617
mnoone@sertasimmons.com

**From:** Jim Roberts <JRoberts@SertaSimmons.com>
**Sent:** Tuesday, June 08, 2021 1:08 PM
**To:** Michael Noone <mnoone@sertasimmons.com>
**Subject:** FW: Daily Deals Review

Mike,

See Derek's comments below. Let's think about what actions we can do to address here. Feel free to set up a call to discuss further.

Thanks



**FW: Daily Deals Review**

Michael Noone
To: Cameron Thierry

MFRM Daily Deals ROI Analysis 06.03.21.pdf
626 KB

Jim Roberts
Senior Vice President of Sales
**Serta Simmons Bedding**
2451 Industry Avenue | Doraville, Georgia 30360
Mobile: (678) 664-3500
jroberts@sertasimmons.com

From: Derek Miller <DMILLER@SertaSimmons.com>
Sent: Tuesday, June 8, 2021 5:34 AM
To: Jim Roberts <JRoberts@SertaSimmons.com>
Subject: RE: Daily Deals Review

Jim,

Sorry for the delayed response here. Good analysis overall, but to me, the next steps involve a deep dive from Mike Noone & the month team at Firm. What's the "why"? Why are we seeing the decline in unit trends while on sale? Why aren't we seeing the lift overall that we used to? What can be done to optimize, besides not including models that are not good economically.

This is an opportunity for Noone to shine. What are his other ideas around optimizing and leading with solutions?

**DEREK MILLER**
CHIEF SALES OFFICER
**Serta Simmons Bedding**
2451 Industry Avenue | Doraville, GA 30360
Mobile: (409) 951-0891
dmiller@sertasimmons.com



**FW: Daily Deals Review**

Michael Noone
To  Cameron Thierry

MFRM Daily Deals ROI Analysis 06.03.21.pdf
626 KB

2451 Industry Avenue | Doraville, GA 30360
Mobile: (469) 951-0891
jmiller@sertasimmons.com

**From:** Jim Roberts <JRoberts@SertaSimmons.com>
**Sent:** Tuesday, May 25, 2021 2:33 PM
**To:** Derek Miller <DMILLER@SertaSimmons.com>
**Subject:** Daily Deals Review

Derek,

My apologies this took so long to get to you but I wanted to get a full 12 month view and we can't run the analysis accurately until we got the credit request from MFRM after the events.

Attached is a review of Daily Deals sales and profitability. Cameron, Laney and I reviewed this with Zak and in a nutshell, participation in Daily Dals is not profitable. BUT, beds like the Serta Kleinmon and Trelleburg drive the bulk of the low and those will be profitable with the new Serta line after June which are significantly higher contribution margin beds so I believe it will be profitable moving forward. Based on this I believe we need to keep them and they can drive profitable volume driving forward, though I believe we need to continue to keep models that are a loss like Charlotte, Palm Coast, Will brook and Sandburg out.

I hope this is helpful and we can discuss this more on our Friday 1:1 call as well if you like as well.

Thanks

Jim Roberts
Senior Vice President of Sales
**Serta Simmons** Bedding
2451 Industry Avenue | Doraville, Georgia 30360
Mobile: (469) 951-0891

**Exhibit F - Promo**





**Development**

**Cameron Thierry**
To: Zak Kennedy
Cc: Allan Leung

Hi Zak –

As I work on my development plan, I am wondering if there is an opportunity for me to be promoted in-role in the near term?

While I only manage one account (though significant) as compared to my counterparts, my span of responsibilities stretch across a similar spectrum of deliverables.

Below is a quick high-level summary of some of my key responsibilities / contributions.

- Presenting MFBM executive level monthly reporting externally
  - Monthly Business Review (MBR)

- Presenting monthly Performance and Financial reviews internally (incl. Senior Leadership Team level materials)
  - Tying in Retail, Wholesale and KPI results with actions plans / recommendations (Performance/Retail reports)
  - S&N reporting

- Monthly and Ad Hoc Forecasting
  - Above average accuracy
  - Supportive analytical tools
  - New P&L tool agility

- Account Data Analytics Leader
  - Focus on accuracy

- Insightful Ad Hoc Analyses and Modelling
  - Daily Deals Proove
  - Headboards (incl. agreement draft)



**Development**

Cameron Thierry
To: Zak Kennedy
Cc: Allen Leung

- Thoughtful Price Modeling
  - Implementing custom Pricing Actions with options via creative tools and analysis
  - Attention to detail
  - Subsidy reductions

- New Product Launches
  - Created informative schedules shareable across functions
  - Timely updates

- Promotion Modeling Support
  - Series Bundle
  - Relief Bed Giveaway

I can see the improvement and impact driving these initiatives has had on the account, and how that has translated into the business, since coming into the role over a year ago when there were very few tools/resources in place to report out performance.

I believe that my performance, along with the visibility and influence I have brought to the role, warrants promotion.

I understand that this 'ask' may come with some additional responsibilities, which I would be happy to discuss further.

Thank you in advance for your consideration.

Best,

**Cameron M. Thierry, CPA**
FP&A

**Serta Simmons** Bedding

**Exhibit G - Computer Issue**















RE: [External]:

CT  Cameron Thierry
To  Zak Kennedy; Akiena Parris, Bobby Deen
Cc  Fred Benton
(i) This message was sent with High Importance.

I have spent multiple hours troubleshooting the issue with Bobby and other members of the IT Team over time. I even have some video footage of events that has yet to be explained to me.

Bobby – after I brought my computer into the office for you to review, performance actually ended up weakening (i.e. I started getting a new error message that would not allow me to open multiple documents at once, which I had been able to do prior to bringing the laptop in to you.)

Issues did not begin with this newer laptop until early Feb and have ensued.

Multiple applications seem to be prone to impact here.

Best,

CT
(m) 678.230.2309

From: Zak Kennedy <zkennedy@sertasimmons.com>
Sent: Monday, July 19, 2021 11:58 PM
To: Akiena Parris <aParris@sertasimmons.com>; Bobby Dean <bdean@SertaSimmons.com>
Cc: Fred Benton <fbenton@SertaSimmons.com>; Cameron Thierry <cthierry@SertaSimmons.com>
Subject: RE: [External]:

Akiena-
I don't need to be involved.
If the problems are persisting I would suggest a different machine, but I am not an i expert.

**Exhibit H - Mid-Year**



RE: Mid-Year Review

**Zak Kennedy**
To  Cameron Thierry
Cc  Mairo Akpose
① You replied to this message on 7/1/2021 10:14 AM.
Thanks.

From: Cameron Thierry <cthierry@SertaSimmons.com>
Sent: Thursday, July 1, 2021 9:11 AM
To: Zak Kennedy <zkennedy@sertasimmons.com>
Cc: Mairo Akpose <makpose@SertaSimmons.com>
Subject: RE: Mid-Year Review

Hi Zak –

During my MY review session you mentioned something that stuck with, and bothered, me, so I wanted to follow-up for further clarity.

You mentioned that I would not become a CFO at SSB – that my first CFO job would not be with the Company. Why do you feel that I would not be able to attain this role at SSB?

Becoming a CFO is my career aspiration, and I have shared that with you since Day 1, so the comment made yesterday was a bit unsettling for me.

Best,

-  CT
    (m) 678.230.2309

----Original Appointment----
From: Zak Kennedy <zkennedy@sertasimmong.com>
Sent: Monday, June 14, 2021 11:40 PM
To: Zak Kennedy, Cameron Thierry
Subject: Mid-Year Review
When: Wednesday, June 30, 2021 11:30 AM-12:00 PM (UTC-05:00) Eastern Time (US & Canada)



RE: Mid-Year Review

Zak Kennedy
To Cameron Thierry
Cc Mairo Akpose

You replied to this message on 7/1/2021 10:14 AM.

Cameron-
Thanks for the email.
Understand the concern.
My comment of what I meant to say was your first CFO opportunity may not be at SSB, this is not up to me to decide though. It is my job to get you prepared for that role through experiences at SSB.
I certainly want to help you attain since this is your career aspiration and as I stated I am dedicated to help, and will continue to look for opportunities with you to help you prepare.
Apologies for the mis-do/mis-communication, that is on me!
Thanks

From: Cameron Thierry <cthierry@SertaSimmons.com>
Sent: Thursday, July 1, 2021 9:11 AM
To: Zak Kennedy <zkennedy@SertaSimmons.com>
Cc: Mairo Akpose <makpose@SertaSimmons.com>
Subject: RE: Mid-Year Review

Hi Zak –

During my MY review session you mentioned something that stuck with, and bothered, me, so I wanted to follow-up for further clarity.

You mentioned that I would not become a CFO at SSB – that my first CFO job would not be with the Company. Why do you feel that I would not be able to attain the role at SSB?

Becoming a CFO is my career aspiration, and I have shared that with you since Day 1, so the comment made yesterday was a bit unsettling for me.

Best,

CT
(m) 678.230.7301



Step Due Notification

System System <system@successfactors.com>
To: Cameron Thierry

CAUTION: This is a message from an EXTERNAL sender. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Serta Simmons** Bedding

Please be advised that the "**Annual Employee Self-Assessment**" step for the document **2020 Performance Review for Cameron McKinley Thierry** is due on 11/30/2020.

You can access this document at the following URL:
Document Link

SAP SuccessFactors



Step Due Notification

System System <system@successfactors.com>
To  Cameron Thierry

CAUTION: This is a message from an EXTERNAL sender. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Serta Simmons** Bedding

Please be advised that the **"Annual Employee Self-Assessment"** step for the document **2020 Performance Review for Cameron McKinley Thierry** is due on 11/30/2020.

You can access this document at the following URL:
Document Link

SAP SuccessFactors





Performance ▾

2021 Performance Review for Cameron McKinley Thierry

👤 **Cameron McKinley Thierry**      ⚠ 9                                                      📎 0

Route Map | Introduction | Employee Information | Review Dates | Mid-Year Assessment | Goals | Competencies | Employee Summary

## Route Map



① Mid-Year Employee Self-Assessment   ② Mid-Year Manager Assessment   ③ Due 11/21/2021 Annual Employee Self-Assessment

## Introduction

Welcome to the annual performance management process. This process is designed to help you and your manager identify your accomplishments and goal ach enter your ratings and/or comments in the sections below. If you have questions about entering information on the form, click the Help & Tutorial link in the upp your changes by clicking the Save icon in the upper right hand corner of the form.

## Employee Information

| | | | | |
|---|---|---|---|---|
| **Last Name** | Thierry | | **First Name** | Cameron |
| **Job Title** | Mgr - Finance | | **Department** | Financial Planning & Analysis (0 |

## Review Dates

| | |
|---|---|
| **Originator:** | PMGM Admin |
| **Review Period:** | 06/02/2021 – 03/31/2022 |
| **Due Date:** | 03/31/2022 |

## Mid-Year Assessment

Welcome to your mid-year performance review. This is an ideal opportunity to recognize and celebrate your accomplishments from the first half of the year and/ plans for areas which need improvement. This is also a great time to update your goals (if necessary) and re-clarify expectations, to prevent any surprises during To begin, update your goals, where necessary, and enter your comments in the sections below. If you have questions about entering information on the form, cli corner of the page. Remember to save your changes by clicking the Save icon in the upper right-hand corner of the form.

**Employee Comments**          Below is a quick high-level summary of my mid-year key contributions towards my goals:

• Presenting MFRM exec level monthly reporting externally **(GOAL 3.3)**

- Monthly Business Review (MBR)
  - Presenting financial performance
  - Opening dialogue on product performance

• Presenting monthly Performance and Financial reviews internally (incl. Senior Leadership Team level materials) **(GOAL 3.3)**

- Tying in Retail, Wholesale and KPI results with action plans / recommendations (Performance/Retail reports)
- Account Scorecard/Drive Sales report preparations
- Custom T&N sales activity reporting
- Influencing MFRM eComm reporting dashboard from Sales Ops
- Built Serta Licensee BOS Report (by market)
- Maintained contract database updates

H-6

Back to: Inbox

## 2021 Performance Review for Cameron McKinley Thierry

⋮ Actions    🕐 History    🖨    ⤴

👤 **Cameron McKinley Thierry**    ⚠ 9    📎 0

Route Map    Introduction    Employee Information    Review Dates    Mid-Year Assessment    Goals    Competencies    Employee Summary

Support

• Account Data Analytics Leader **(GOAL 3.3)**

- Focus on accuracy

• Insightful Ad Hoc Analyses and Modeling **(GOAL 3.1/3.2/3.3)**

- Daily Deals Promo
  - Prepared product financials with/without 5% cost rebate impact
  - Thorough analysis by model with insightful presentation, providing Sales team the opportunity to challenge the program performance where needed
- In-Store Headboards
  - Financial analysis
  - CAR Form preparation and routing
  - Led execution of agreement draft, bringing together the proper internal cross-function teams for input

• Thoughtful Price Modeling **(GOAL 3.2/3.3/3.4)**

- Built creative pricing action analysis tool for custom wholesale/subsidy change impacts to profit
  - Including instituting subsidy reductions where opportunity permitted
- Delivered custom Pricing Actions with options to MFRM
  - Created national customer facing pricing pages (price increase by model by size) for Aug '21 national increase
- Attention to detail
- Program modeling (CFS/Mattress Madness/RSA Bed Contest)

• New Product Launches **(GOAL 3.2/3.3)**

- Created informative forecast schedules shareable across functions
- Custom floor sample discount modeling/tracking
- Provided timely updates on any changes to launch projections, with financial impacts

• Promotion Modeling Support **(GOAL 3.2/3.3)**

- RSA Bed Contest
- iSeries Bundle
- Relief Bed Giveaway (tied to PSL Nestled Night MIB 10" or iSeries Hybrid)
  - Created template for other teams to utilize in summarizing impact analysis

• Participating in SSB Diversity initiatives and the Commercial Team's 'Jam Journey' sessions **(GOAL 3.5)**

I can see the improvement and impact driving these initiatives has had on the account, and how that has translated into the business, since coming into the role over a year ago when there were very few tools/resources in place to report out performance.

I believe that my performance, along with the visibility and influence I have brought to the role, warrants promotion in-role.

I understand that this 'ask' may come with some additional responsibilities, which I would be happy to discuss further.

**Manager Comments**

You have shown growth in your role in the last 18 months you have been in position and the team is dependent on you. The organization is reliant on sales finance to ensure that we are making the best decisions for SSB and you need to be that trusted partner.

Post our MY discussion, it has come to my attention that you have had computer issues that have made it challenging to complete your work. I understand that not having a functioning computer would be frustrating and would prevent some work from being done.
This does not however excuse being unavailable to your business partners starting early July and finance partners starting the 2nd week of July. This unavailability includes not being responsive via phone, on scheduled conference calls, skipping meetings that you set up yourself, or transferring work/knowledge so counterparts can assist when directed to do so. Your business counterparts have reported long gaps in deliverables and inability to get a consistent response.
There are multiple forms of communication, including your company provided phone, that you did not utilize despite efforts from numerous individuals to engage you that would have helped the team manage through the situation in your absence. You didn't give yourself enough credit for assuming that you couldn't add value to the organization when one mode (computer) of being able to work was not functioning as you would like.

H-7

7/27/2021

Case 1:23-cv-00279-MHC-JEM    Document 1    Filed 01/17/23    Page 98 of 135
SuccessFactors: 2021 Performance Review for Cameron McKinley Thierry

Back to: Inbox

## 2021 Performance Review for Cameron McKinley Thierry

⋮ Actions    ⏱ History    🖶    🔓

👤    **Cameron McKinley Thierry**    ⚠ 9    📎 0

Route Map    Introduction    Employee Information    Review Dates    Mid-Year Assessment    Goals    Competencies    Employee Summary

3. Profitability: Drive profitable share growth

### 3.1 Deliver MFRM plan ($596M AGS, $251M GP, $104M CM)

• Deliver at or below $5.5M Capital spending target
• Improve MFRM financial forecast accuracy
90% target for Dealer
< 10% variance on the Sub-brand level

* Rating ⑦
⭘⭘⭘⭘⭘ No Rating Selected

### Goal Details

| Goal Name | Deliver MFRM plan ($596M AGS, $251M GP, $104M CM) | Metric | • Deliver at or below $5.5M Ca |
|---|---|---|---|
| Start Date | 01/01/2021 | | • Improve MFRM financial fore<br>90% target for Dealer |
| % Complete | 0.0% | | < 10% variance on the Sub-br |
| | | Due Date | 12/31/2021 |
| | | Status | On Track |

3. Profitability: Drive profitable share growth

### 3.2 Drive a focus on Cash and strengthen our Capital Structure

• Evaluate opportunities to accelerate MFRM revenue growth (in-store, dotcom and E&O product)
• Drive MFRM capital project post audits

* Rating ⑦
⭘⭘⭘⭘⭘ No Rating Selected

### Goal Details

| Goal Name | Drive a focus on Cash and strengthen our Capital Structure | Metric | • Evaluate opportunities to acc |
|---|---|---|---|
| Start Date | 01/01/2021 | | store, dotcom and E&O produ<br>• Drive MFRM capital project p |
| % Complete | 0.0% | | |
| | | Due Date | 12/31/2021 |
| | | Status | On Track |

3. Profitability: Drive profitable share growth

### 3.3 Prepare the organization for potential transition

• Execute deliverables based on results of transformation assessment
• Ensure SOX compliance readiness
• Improve dealer account controls environment through documentation, training and awareness, compliance and accountability

* Rating ⑦
⭘⭘⭘⭘⭘ No Rating Selected

H-8

Back to: Inbox

## 2021 Performance Review for Cameron McKinley Thierry

⁝ Actions    ⊕ History    🖨    ⤓

👤 **Cameron McKinley Thierry**    ⚠ 9    ⌀ 0

| Route Map | Introduction | Employee Information | Review Dates | Mid-Year Assessment | Goals | Competencies | Employee Summary |

| | | |
|---|---|---|
| | **Status** | Not Started |

6. Performance Culture: Develop a performance-based culture executing as one team

### 6.1 Drive execution of the SSB transformation priorities

• Significantly improve processes, controls, and accountability across MFRM Sales team by leveraging drive sales initiatives
• Challenge the status quo and improve controls on pricing
• Drive transformation of MFRM dealer economics
• Execute consistent reporting/profit analytics on business results, providing actionable insights

* Rating ⑦
○○○○○ No Rating Selected

### Goal Details

| Goal Name | Drive execution of the SSB transformation priorities | **Metric** | • Significantly improve process MFRM Sales team by leveragi |
|---|---|---|---|
| Start Date | 01/01/2021 | | • Challenge the status quo and |
| % Complete | 0.0% | | • Drive transformation of M |
| | | | • Execute consistent report |
| | | | providing actionable insight |
| | | **Due Date** | 12/31/2021 |
| | | **Status** | On Track |

6. Performance Culture: Develop a performance-based culture executing as one team

### 6.2 Develop a high-performance Finance Sales team

• Engage in Diversity & Inclusion efforts, including active participation in employee resource groups
• Develop SSB career roadmap and identify key milestones
• Complete required CPE hours (min 20 hours/year) to maintain GA CPA license (on industry related topics)

* Rating ⑦
○○○○○ No Rating Selected

### Goal Details

| Goal Name | Develop a high-performance Finance Sales team | **Metric** | • Engage in Diversity & Inclusi |
|---|---|---|---|
| Start Date | 02/01/2021 | | in employee resource groups |
| % Complete | 0.0% | | • Develop SSB career roadma |
| | | | • Complete required CPE hour |
| | | | CPA license (on industry relate |
| | | **Due Date** | 12/31/2021 |
| | | **Status** | On Track |

## Competencies

This section is for evaluating the accomplishments of the Core Competencies.

H-9

Back to: Inbox

## 2021 Performance Review for Cameron McKinley Thierry

⋮ Actions     ⏱ History     🖨     ⎘

👤 **Cameron McKinley Thierry**     ⚠ 9                                          📎 0

Route Map     Introduction     Employee Information     Review Dates     Mid-Year Assessment     Goals     Competencies     Employee Summary

Rating ⓘ

⬭⬭⬭⬭⬭ No Rating Selected

### 2. Results Leadership

Starts Everything With The Customer, Sets & Achieves goals that Connect To SSB Strategic Priorities, Does the Right Things the Right Way, Does not Confuse Ef

* Rating ⓘ

⬭⬭⬭⬭⬭ No Rating Selected

### 3. Thought Leadership

Executes Today with a Vision For Tomorrow, Drives to Support Decisions Even When It Isn't Exactly Their Way, Understands and Reacts to Business Dynamics Q Focuses on Continuous Improvement

* Rating ⓘ

⬭⬭⬭⬭⬭ No Rating Selected

### 4. People Leadership

Focuses on ONE SSB at all times, Has an A Player Mentality, Can See and Describe What Winning Looks Like, Champions a Matrixed Mentality, Creates Stro

* Rating ⓘ

⬭⬭⬭⬭⬭ No Rating Selected

## Employee Summary

This section is for any employee comments.

**Employee Comments**

Exhibit I - HR

 Gmail

Cameron Thierry <cameron.thierry@gmail.com>

## RE: [External]:Re: Please give me a call when you get this
1 message

**Angelica Bucki** <abucki@sertasimmons.com>                          Thu, Jul 22, 2021 at 5:55 PM
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>
Cc: Cameron Thierry <cthierry@sertasimmons.com>

Hi Cameron,

Yes, I did say that there is no HR policy surrounding emergency contact usage.

Our first and foremost concern is employee health and well-being and since I was not able to reach you and your team also said they had not been able to reach you, we reached out to your contacts.

I provided the EAP information because we that is a resource I like to ensure our employees are ware of. Please let me know if there are any other resources we can provide.

Thank you,

**Angie Bucki**
Sr HR Generalist

**Mobile:** (678) 431-2649

abucki@sertasimmons.com

**From:** cameron.thierry@gmail.com <cameron.thierry@gmail.com>
**Sent:** Thursday, July 22, 2021 4:08 PM
**To:** Angelica Bucki <abucki@SertaSimmons.com>

I-1

**Cc:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** [External]:Re: Please give me a call when you get this

---

**CAUTION**: This is a message from an **EXTERNAL** sender. Do not click links or open attachments unless you recognize
the sender and know the content is safe.

---

Hi Angie -

This afternoon on the phone you mentioned SSB does not have a HR policy surrounding emergency contact usage. Is
that correct?

I am still questioning the reasoning you provided for reaching out there, as it seems to be an overly extreme action to
take after a couple of hours of not getting a response from me.

Also, I am not sure why EAP was brought up concerning my arm pain incident, but maybe I should go get my arm
looked into further.

Best,

- CT

On Jul 22, 2021, at 9:29 AM, Angelica Bucki <abucki@sertasimmons.com> wrote:

Hi Cameron,

This is Angie Bucki from Human Resources. I've left you a voicemail and am
reaching out to you because I understand you're having trouble working because of
a PC issue. I want to make sure we're doing everything we can from the SSB side to
support you. Can you please give me a call at 678-431-2649 when you get this
message.

I-2

Thank you,

**Angie Bucki**
Sr HR Generalist

<image001.gif>

2451 Industry Avenue | Doraville, GA 30360

**Mobile:** (678) 431-2649

abucki@sertasimmons.com

I-3





4:08

14

**cameron.thierry@gmail.com**    4:07 PM
To: Angelica  Cc: Cameron >

## Re: Please give me a call when you get this

Hi Angie –

This afternoon on the phone you mentioned SSB does not have a HR policy surrounding emergency contact usage. Is that correct?

I am still questioning the reasoning you provided for reaching out there, as it seems to be an overly extreme action to take after a couple of hours of not getting a response from me.

Also, I am not sure why EAP was brought up concerning my arm pain incident, but maybe I should go get my arm looked into further.

Best,

– CT

On Jul 22, 2021, at 9:29 AM, Angelica Bucki <abucki@sertasimmons.com> wrote:

 **Gmail**

Cameron Thierry <cameron.thierry@gmail.com>

## FW: Follow-Up

**Cameron Thierry** <cthierry@sertasimmons.com>                                            Tue, Jul 27, 2021 at 10:57 AM
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>

**From:** Cameron Thierry
**Sent:** Tuesday, July 27, 2021 10:58 AM
**To:** Mairo Akpose <makpose@SertaSimmons.com>; Angelica Bucki <abucki@SertaSimmons.com>; Dan Goldblatt <dgoldblatt@SertaSimmons.com>
**Subject:** RE: Follow-Up

I do not have confidence in Zak or Angie at this point – I would prefer to not partner with her any further.

Will hold communications, thank you.

Best,

- CT

**From:** Mairo Akpose <makpose@SertaSimmons.com>
**Sent:** Tuesday, July 27, 2021 10:54 AM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>; Angelica Bucki <abucki@SertaSimmons.com>; Dan Goldblatt <dgoldblatt@SertaSimmons.com>
**Subject:** RE: Follow-Up

Good Morning, Cameron.

I know Angie is currently partnering with you. She is not available this morning. However, she will schedule time to connect with you when she is back online.

In the meantime, my request is that you hold on any further email communications until you speak with Angie. I have the utmost confidence in her to ensure we get to the best resolution.

**Ms. Mairo Akposé**
VP, Corporate HR

**Office:** (404) 534-5501

makpose@sertasimmons.com

**From:** Cameron Thierry <cthierry@SertaSimmons.com>
**Sent:** Tuesday, July 27, 2021 10:47 AM
**To:** Angelica Bucki <abucki@SertaSimmons.com>; Dan Goldblatt <dgoldblatt@SertaSimmons.com>; Mairo Akpose <makpose@SertaSimmons.com>
**Subject:** RE: Follow-Up
**Importance:** High

Am I going to need HR support here, as my trust in Zak is now very strained – I expect HR to step-in and ensure the right thing is done at this point...

Best,

- CT

**From:** Cameron Thierry
**Sent:** Tuesday, July 27, 2021 10:26 AM

I-6

Gmail - FW: Follow-Up                                                                                           7/30/21, 3:22 PM

**To:** Zak Kennedy <zkennedy@sertasimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; **Mairo Akpose** <makpose@SertaSimmons.com>; **Dan Goldblatt** <dgoldblatt@SertaSimmons.com>
**Subject:** RE: Follow-Up

Also – why did I not receive a notification from success factors after your comments were recently entered?

Best,

- CT

**From:** Cameron Thierry
**Sent:** Tuesday, July 27, 2021 10:21 AM
**To:** Zak Kennedy <zkennedy@sertasimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; **Mairo Akpose** <makpose@SertaSimmons.com>; **Dan Goldblatt** <dgoldblatt@SertaSimmons.com>
**Subject:** RE: Follow-Up
**Importance:** High

Zak –

I am very disturbed by you using this computer event as a synopsis to my midyear review write-up (submitted on 7/23), as the takeaway from 6 months of hard work and dedication. Also, note the computer event even occurred after the midyear mark. You caused the delay in me receiving my new machine by ignoring and/or not responding to my computer request along the way.

We met on my review on 6/30 and you shared very different comments about me (all very positive remarks, and mentions of a Sr. Manager Finance role becoming "popping" for me soon, as detailed in my notes).

**I would like you to remove these comments from my midyear review immediately, and I would like an update on the availability of the mentioned role "popping" for me.**

**This is unacceptable behavior.**

 **Cameron McKinley Thierry**        ⚠ 9

Route Map    Introduction    Employee Information    Review Dates    Mid-Year Assessment    Goals    Competencies    Employee Summary

| | |
|---|---|
| **Manager Comments** | You have shown growth in your role in the last 18 months you have been in position and the team is dependent on you. The organization is reliant on sales finance to ensure that we are making the best decisions for SSB and you need to be that trusted partner.<br><br>Post our MY discussion, it has come to my attention that you have had computer issues that have made it challenging to complete your work. I understand that not having a functioning computer would be frustrating and would prevent some work from being done.<br>This does not however excuse being unavailable to your business partners starting early July and finance partners starting the 2nd week of July. This unavailability includes not being responsive via phone, on scheduled conference calls, skipping meetings that you set up yourself, or transferring work/knowledge so counterparts can assist when directed to do so. Your business counterparts have reported long gaps in deliverables and inability to get a consistent response.<br>There are multiple forms of communication, including your company provided phone, that you did not utilize despite efforts from numerous individuals to engage you that would have helped the team manage through the situation in your absence. You didn't give yourself enough credit for assuming that you couldn't add value to the organization when one mode (computer) of being able to work was not functioning as you would like.<br>You will need to mend these relationships as it appears that trust has been strained. As you progress in your career there are multiple traits that lead to success, but if you are not present and responsive for extended periods of time no one will know. |

**From:** Cameron Thierry
**Sent:** Tuesday, July 27, 2021 9:54 AM
**To:** Zak Kennedy <zkennedy@sertasimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; **Mairo Akpose** <makpose@SertaSimmons.com>
**Subject:** RE: Follow-Up

Edits below in blue.

I-7

Best,

- CT

**From:** Cameron Thierry
**Sent:** Monday, July 26, 2021 6:57 PM
**To:** Zak Kennedy <zkennedy@sertasimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; Mairo Akpose <makpose@SertaSimmons.com>
**Subject:** RE: Follow-Up

Hi Zak –

As I told you, Bobby did not follow-up with me on ever setting up email on my phone, after personally speaking to him about the request, and sending him the error message I was receiving while trying to do so on my own (can provide email support here). Bobby was emailing before reaching out via text during my machine downtime, all the while knowing I do not have email on my phone to access those messages, which I still do not understand.

Therefore, as mentioned during our touchpoint today, this impacts said expectations of my attendance and participation in all meetings scheduled and responses when people are contacting me. Having no access to calendars/emails/files. **However, I am pretty sure I can prove that I did communicate with someone from SSB each day that my machine was down (which was almost two weeks).**

The deadlines imposed below are unreasonable, and I will respond back with reasonable times after further review of the list tomorrow morning.

**I want to be clear in emphasizing that I was personally never the issue in this case – I needed a new machine in order to do my job, due to root causes yet to be explained or understood by IT.**

Best,

- CT

**From:** Zak Kennedy <zkennedy@sertasimmons.com>
**Sent:** Monday, July 26, 2021 6:12 PM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Subject:** Follow-Up

Cameron-

Glad you are back!

As discussed, now that you have your replacement machine I expect your attendance and participation in all meetings scheduled and respond when people are contacting you, specifically being available and communicative during work hours.  This is no different than what expectations are without a functioning computer.

SSB cares deeply for your wellbeing and respects your work, but if you are not responsive and not keeping your business partners informed they will worry and not know the true value you can bring.

Items that need your attention that I have identified:

1.  6+6 fcst –
    a.  TDC - we are now outside of the period where we could have impacted, but you need to validate the most recent outlook and quantify the risk/opportunity by sub-brand and total by month for the balance of the year as we are not currently rolling up to where we need to as an organization – DUE EOD Tuesday, July 27th 2021 EOB 08/02
    b.  Dealer Expenses – Maureen worked with the MattFirm team to develop the MY.  You likely have better insights into expected drivers – validate and quantify the risk/opportunity and we will discuss prior to making changes, if necessary - DUE EOD Tuesday, July 27th 2021 EOB 08/02

    CapEx - DUE EOD Tuesday, July 27th 2021 EOB 08/02

2.  7+5 Fcst – You may have rescheduled these – so as scheduled
    a.  Lead adjustable base/mib forecast enrichment call
    b.  Lead total forecast enrichment call

3.  MattFirm iSeries adj base – surcharge went into effect 07/22, but need to identify outstanding orders taken prior to 07/22 that are scheduled/have not been delivered that will need surcharge applied/debit memo, etc (call on the scheduled for 08/02) EOB 08/04

    cost analysis on the new iSeries Dual bed EOB 7/27 EOB 07/30

4.  Business review slides for June - EOB 7/28 EOB 08/06
5.  Monthly financial performance review (internal)- Schedule recurring monthly team meeting beginning Monday 8/9 at 11:00. - EOB 7/28 EOB 08/06
6.  Attend Power 90 call and present weekly financial trends- 9:30 7/30
7.  Complete all in one report for June- EOB 7/30 EOB 08/06

I-8

Thanks!

Zak

I-9

 Gmail                                    Cameron Thierry <cameron.thierry@gmail.com>

## FW: Accepting Your Request to Go Separate Ways

1 message

**Cameron Thierry** <cthierry@sertasimmons.com>                          Wed, Jul 28, 2021 at 9:34 AM
To: "cameron.thierry@gmail.com" <cameron.thierry@gmail.com>

**From:** Cameron Thierry
**Sent:** Wednesday, July 28, 2021 9:34 AM
**To:** Mairo Akpose <makpose@SertaSimmons.com>
**Subject:** RE: Accepting Your Request to Go Separate Ways

Also – I would still like my midyear review write-up to be corrected to state truth.

Best,

- CT

**From:** Cameron Thierry
**Sent:** Wednesday, July 28, 2021 8:56 AM
**To:** Mairo Akpose <makpose@SertaSimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; Zak Kennedy <zkennedy@sertasimmons.com>; Dan Goldblatt <dgoldblatt@SertaSimmons.com>
**Subject:** RE: Accepting Your Request to Go Separate Ways
**Importance:** High

Just want to clarify I am not quitting – you can fire me if you'd like, since you do not want to do the right thing.

I DID NOT QUIT.

We agreed to disagree.

Best,

I-10

- CT

**From:** Mairo Akpose <makpose@SertaSimmons.com>
**Sent:** Wednesday, July 28, 2021 8:54 AM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>
**Cc:** Angelica Bucki <abucki@SertaSimmons.com>; **Zak Kennedy** <zkennedy@sertasimmons.com>
**Subject:** Accepting Your Request to Go Separate Ways

Cameron,

Per our conversation this morning, I accepted your request to "go separate ways" which means you will be leaving the organization. I will follow-up with you in the next 24 hours.

Thank you

**Ms. Mairo Akposé**
VP, Corporate HR

**Serta Simmons** Bedding

2451 Industry Ave. | Doraville, GA 30360
**Office:** (404) 534-5501

**Mobile:** (678) 231-5397

makpose@sertasimmons.com



 **Gmail**

Cameron Thierry <cameron.thierry@gmail.com>

## Re: Cameron Thierry's Resignation

1 message

**cameron.thierry@gmail.com** <cameron.thierry@gmail.com>
To: Mairo Akpose <makpose@sertasimmons.com>

Thu, Jul 29, 2021 at 12:50 PM

*Would **you** like to accept another 24 hours to respond with an offer?*

- excuse typos, in haste.

Sent from my iPhone

> On Jul 29, 2021, at 12:48 PM, cameron.thierry@gmail.com wrote:
>
> Good Afternoon Mairo.
>
> I can't seem to get ahold of you live since yesterday, hope you're ok!
>
> We had a dispute and my meaning (and expectation) was some form of arbitration.
>
> Would like to accept another 24 hours to respond with an offer?
>
> Best,
>
> - CT
>
>> On Jul 29, 2021, at 8:53 AM, cameron.thierry@gmail.com wrote:
>>
>> Hi Mairo -
>>
>> I did not, and am not, agreeing to resigning from my position. As I followed-up with via the attached email, and text to you (see attached email).
>> <image0.jpeg>
>>
>> I will seek council immediately!
>>
>> Best,
>>
>> - CT
>>
>>> On Jul 29, 2021, at 8:00 AM, Mairo Akpose

<makpose@sertasimmons.com> **wrote:**


Good Morning Cameron.


As you know, I committed to follow-up with you within 24 hours regarding
your request that we "go our separate ways". Accordingly, here is the
company's response: your resignation has been accepted effective July 28,
2021.


I will provide the below information to our IT Asset Management team to
initiate the equipment return process. You will be cc'd on the email.


5193 Peachtree Blvd

Apt 1407

Atlanta, GA 30341

cameron.thierry@gmail.com

470-725-7216


**Ms. Mairo Akposé**
VP, Corporate HR


<image001.png>


2451 Industry Ave. | Doraville, GA 30360
**Office:** (404) 534-5501

**Mobile:** (678) 231-5397

makpose@sertasimmons.com

 Gmail

Cameron Thierry <cameron.thierry@gmail.com>

## Re: IT Equipment Return - Cameron Thierry

1 message

**cameron.thierry@gmail.com** <cameron.thierry@gmail.com>                Thu, Jul 29, 2021 at 9:06 AM
To: Marie Joseph <mjoseph@sertasimmons.com>
Cc: Mairo Akpose <makpose@sertasimmons.com>, IT Asset Management <itassetmanagement@sertasimmons.com>

Please reference separate email sent back to you at 8:53am today. You must've misinterpreted something.

Best,
- CT

> On Jul 29, 2021, at 8:17 AM, Marie Joseph <mjoseph@sertasimmons.com> wrote:

Hello Cameron,

I have attached a copy of our asset return form with instructions for sending equipment back to us. Additionally, I can send you a box with a return label if that helps make this process easier for you.

Please read through the form and let me know if you have any questions as well as whether you prefer, we send a return box out to you to return your IT equipment.

**We are expecting these devices below:**

**Laptops with power cords**:
Computer Names: LT01PF26419C and LT01PF2ZXGCM

**Cell Phone**:
Telephone Number: **678-230-2309**
Model: **Apple iPhone XR 64GB Black**

Serta Simmons Bedding
IT Asset Management Team

**From:** Mairo Akpose <makpose@SertaSimmons.com>
**Sent:** Thursday, July 29, 2021 8:05 AM
**To:** IT Asset Management <itassetmanagement@SertaSimmons.com>
**Cc:** cameron.thierry@gmail.com
**Subject:** IT Equipment Return - Cameron Thierry

Hello Team. Cameron's last day with SSB was Wednesday, July 28. Please begin the equipment return process.

5193 Peachtree Blvd

Apt 1407

Atlanta, GA 30341

cameron.thierry@gmail.com

470-725-7216

Thank you

**Ms. Mairo Akposé**
VP, Corporate HR

<image001.png>

2451 Industry Ave. | Doraville, GA 30360
**Office:** (404) 534-5501

**Mobile:** (678) 231-5397

makpose@sertasimmons.com

<SSB IT Asset Return Form 2021.pdf>



RE: Follow-Up

**CT**  Cameron Thierry
To: Zak Kennedy
Cc: Angelika Bucki; Maino Akpiose

Hi Zak –

As I told you, Bobby did not follow-up with me on ever setting up email on my phone, after personally speaking to him about the request, and sending him the error message I was receiving while trying to do so on my own (can provide email support here). Bobby was emailing before reaching out via text during my machine downtime, all the while knowing I do not have email on my phone to access those messages, which I still do not understand.

Therefore, as mentioned during my touchpoint today, this impacts said expectations of my attendance and participation in all meetings scheduled and responses when people are contacting me. Having no access to calendars/emails/files. However, I am pretty sure I can prove that I did communicate with someone from SSB each day that my machine was down [which was almost two weeks].

The deadlines imposed below are unreasonable, and I will respond back with reasonable times after further review of the list tomorrow morning.

**I want to be clear in emphasizing that I was personally never the issue in this case – I needed a new machine in order to do my job, due to root causes yet to be explained or understood by IT.**

Best,

- CT

**From:** Zak Kennedy <zkennedy@sertasimmons.com>
**Sent:** Monday, July 26, 2021 6:12 PM
**To:** Cameron Thierry <cthierry@SertaSimmons.com>

**Exhibit J - Priorities**



RE: Follow-Up

CT  Cameron Thierry
    To  Zak Kennedy
    Cc  Angelica Bucki, Meiro Akpose

From: Zak Kennedy <zkennedy@sertasimmons.com>
Sent: Monday, July 26, 2021 6:12 PM
To: Cameron Thierry <cthierry@SertaSimmons.com>
Subject: Follow-Up

Cameron-

Glad you are back!

As discussed, now that you have your replacement machine I expect your attendance and participation in all meetings scheduled and respond when people are contacting you, specifically being accessible and communicative during work hours.  This is no different than what expectations are without a functioning computer.
SSB cares deeply for your wellbeing and respects your work, but if you are not responsive and not keeping your business partners informed they will worry and not know the true value you can bring.

Items that need your attention that I have identified:
  1)  6+6 fcst –
      a.  TDC- we are now outside of the period where we could have impacted, but you need to validate the most recent outlook and quantify the risk/opportunity by sub-brand and tone by month for the balance of the year as we are not currently rolling up to where we need to as an organization – DUE EOD Tuesday, July 27th 2021
      b.  Dealer Expenses – Maureen worked with the MattFirm team to develop the MY.  You likely have better insights into expected drivers – validate and quantify the risk/opportunity and let me discuss prior to making changes, if necessary - DUE EOD Tuesday, July 27th 2021
      c.  CapEx - DUE EOD Tuesday, July 27th 2021
  2)  7+5 Fcst – You may have rescheduled these – so as scheduled
      a.  Lead adjustable base forecast enrichment call

Text



RE: Follow-Up

CT    Cameron Thierry
      To: Zak Kennedy
      Cc: Angelica Buckè, Meirò Akpose

Items that need your attention that I have identified:

1) 6+6 fcst –
   a. TDC – we are now outside of the period where we could have impacted, but you need to validate the most recent outlook and quantify the risk/opportunity by sub-brand and total by month for the balance of the year as we are not currently rolling up to where we need to as an organization – DUE EOD Tuesday, July 27th 2021
   b. Dealer Expenses – Maureen worked with the MattFirm team to develop the MY. You likely have better insights into expected drivers – validate and quantify the risk/opportunity and we will discuss prior to making changes, if necessary – DUE EOD Tuesday, July 27th 2021
   c. CapEx – DUE EOD Tuesday, July 27th 2021
2) 7+5 Fcst – You may have rescheduled these – so as scheduled
   a. Lead adjustable base forecast enrichment call
   b. Lead total forecast enrichment call
3) MattFirm iSeries adj base – surcharge went into effect 07/22, but need to identify outstanding orders taken prior to 07/22 that are scheduled/have not been delivered that will need surcharge applied/debit memo, etc (call on the scheduled for 08/02)
4) cost analysis on the new iSeries Dual bed EOB 7/27
5) Business review slides for June – EOB 7/28
6) Monthly financial performance review (internal)– Schedule recurring monthly team meeting beginning Monday 8/9 at 11:00, – EOB 7/28
7) Attend Power 90 call and present weekly financial trends– 9:30 7/30
8) Complete all in one report for June– EOB 7/30

Thanks!
Zak

**Exhibit K - Team Text**



**Exhibit L - Events**

**EXHIBIT L**

| ADDITIONAL DISCRIMINATORY EVENTS OR COMMENTS MADE | | | |
|---|---|---|---|

| Employee(s) Involved | Timing | Topic | Description of Event or Comment |
|---|---|---|---|
| Mike Laney / Jim Roberts | Diversity in the Workplace (7/09/20 and 7/23/20); Coping with Civil Unrest (9/10/20, 9/15/20, 9/17/20); Fostering Inclusion in the Workplace (10/06/20, 10/08/20) | Defendant's Diversity Trainings Opposition | After one diversity training, Mr. Laney made a derogatory comment about them to Plaintiff, just after they both had attended the same session, during a phone call meeting held subsequently. Mr. Laney asked if Plaintiff had attended, and Plaintiff confirmed. Then Mr. Laney commented on how the diversity trainings are a "pain". Mr. Roberts later relayed similar sentiments in regards to diversity trainings to Mr. Laney and Plaintiff. |
| Michael Noone | Q1 2021 | Defendant's Comment Related to Plaintiff's Finger Nails | Mr. Noone made a random comment about "really" craving "to go for some *colorful* M&M's" during a phone call conversation with Plaintiff concerning work, which Plaintiff was insulted by, given his *colorful* painted finger nails. |
| Mike Laney / Jim Roberts | Q1-Q2 2021 | Plaintiff's Exclusion during Power 90 Team Meetings | Mr. Laney and/or Mr. Roberts asked Plaintiff to skip his finance update on their Mattress Firm team weekly Power 90 meetings (aka Power Hour, where each function on the account team provided an update) *multiple times*. Plaintiff was responsible for providing a weekly finance update during this meeting. Plaintiff almost always was the only person/function ever identified/singled-out and asked to skip their update during the meeting. Plaintiff was asked to skip his update more often as time passed by. |
| Zak Kennedy | Q2 2021 | Plaintiff in Sales Role Visible to Defendant | During a one-on-one phone call conversation with Mr. Kennedy about Plaintiff's strong performance, Plaintiff made the following comment about persevering, responding to Mr. Kennedy's positive remarks on his performance with "yes, I have done very well, although people haven't necessarily made it easy for me." Speaking to discriminatory experiences incurred. Mr. Kennedy's response was "well, you're in a role that touches many parts of the organization with lots of visibility." |
| Multiple (see description) | Q4 2020 and Q1-Q2 2021 | Defendant Comments on Plaintiff's Rainbow Elephant Pride Wall-Painting | Interesting comments made concerning Plaintiff's rainbow elephant Pride wall-painting taking notice included: <br> a. During Mattress Firm Team Happy Hour (by Jim Roberts/Mike Laney/Roger Rios on elephant 'good luck' attributions) <br> b. During June 23, 2021 new leader onboarding orientation meeting (by Mairo Akpose vocalizing the beauty of painting) <br> c. During diversity meeting when Plaintiff reported out for group to Defendant company-wide audience (by Lisa Craig, then-VP of Diversity, Equity & Inclusion, vocalizing the beauty of painting) |
| Multiple (see description) | Post Last Day of Employment with Defendant | Retaliatory Behaviors | Various SSB employees have reached out, or stalked Plaintiff's LinkedIn page, post employment with Defendant. Defendant CFO admin Amelia Schroeder sent a text one month post, saying she heard Plaintiff left and was sorry to hear. Paul Bartingale sent a text two months post, asking what was going on in my world, while that same day around the same time, two other Defendant old co-workers viewed and/or tried to add Plaintiff on LinkedIn (Jared Allen and Chris Ward). Defendant CFO Barry Carnipe and other Defendant employees have also viewed Plaintiff's LinkedIn page post his employment with Defendant. |

**Exhibit M - Contact**

## EXHIBIT M

| MR. THIERRY CONTACT MADE July 13, 2021 to July 23, 2021 |
|---|
| (period when laptop performance was unbearable) |

| Date | Person | Method of Contact |
|---|---|---|
| 07/13/21 | Mr. Kennedy/Mr. Dean/SSB IT | Raised the laptop issue and condition via email to Mr. Kennedy/Mr. Dean, and submitted SSB IT support portal ticket. Also spoke to Mr. Dean via phone on issue again. |
| 07/14/21 | *Mr. Thierry awaiting action/response from Mr. Kennedy/Mr. Dean/SSB IT* | *Mr. Thierry awaiting action/response from Mr. Kennedy/Mr. Dean/SSB IT* |
| 07/15/21 | Mr. Kennedy, Mr. Dean, Joann N. (SSB Accounting co-worker), Hayley Girsky (SSB Marketing co-worker) | Mr. Kennedy: phone meeting (one-on-one session, texted me 15 mins after original time and moved to noon, talked 16 mins, discussed issue), email<br>Mr. Dean: text<br>Joann N.: email<br>Hayley Girsky: email |
| 07/16/21 | *Mr. Thierry awaiting action/response from Mr. Kennedy/Mr. Dean/SSB IT* | *Mr. Thierry awaiting action/response from Mr. Kennedy/Mr. Dean/SSB IT* |
| 07/19/21 | Mr. Roberts, Mrs. Littell, Mr. Kennedy | All: text |
| 07/20/21 | Mrs. Littell, Mr. Kennedy | All: text |
| 07/21/21 | Ms. Parris, Mr. Dean, Mr. Kennedy, Fred (SSB IT) | All: email |
| 07/22/21 | Ms. Bucki, Mr. Kennedy, Larger SSB Team | Ms. Bucki: phone/personal email/text<br>Mr. Kennedy: text<br>Larger SSB Team: text |
| 07/23/21 | Mr. Dean | text |

**Exhibit N - Position Statement**

 **ELARBEE THOMPSON**

800 INTERNATIONAL TOWER • 229 PEACHTREE STREET, N.E. • ATLANTA, GEORGIA 30303
TELEPHONE: 404-659-6700 • FAX: 404-222-9718 • www.elarbeethompson.com
WRITER'S DIRECT DIAL: (404) 582-8466
glanton@elarbeethompson.com

February 16, 2022

VIA EMAIL AND EEOC PORTAL

Derick Newton
Federal Investigator
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, S.W.
Suite 4R30
Atlanta, Georgia 30303
derick.newton@eeoc.gov

> Re:    Charging Party: Cameron Thierry
> Respondent: Serta Simmons Bedding LLC
> EEOC Charge No. 410-2021-05782

Dear Mr. Newton:

This law firm represents Respondent Serta Simmons Bedding LLC ("Respondent," "SSB," or the "Company"). Please consider this correspondence and the attached documents as the Company's Position Statement in response to the allegations contained in Charging Party Cameron Thierry's ("Charging Party" or "Thierry") EEOC Charge. Although based on the best information presently available, this Position Statement is preliminary in nature and, therefore, subject to change if additional, different, or more accurate information becomes available. Thus, the failure to raise any defense, make any argument, or set forth any fact in this Position Statement does not indicate any waiver of that argument or defense or any intent not to rely on that fact. Finally, this response does not constitute an affidavit or declaration, and is not intended to be used as evidence in any legal or administrative proceeding.

## I.    CHARGING PARTY'S ALLEGATIONS

Charging Party, who identifies as an African American man, brings forth claims of alleged race and sex, including sexual orientation, discrimination, all in purported violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). In his EEOC Charge, Charging Party states that he was hired in August 2018 and promoted in January 2020. His discrimination claim is based on the assertion that he was denied a promotion in June 2021 and then constructively discharged in July 2021 after experiencing computer issues that

Mr. Derick Newton
February 16, 2022
Page 2
prevented him from being able to complete his work.

As the foregoing will demonstrate, Charging Party's claims are without merit. Therefore, SSB respectfully requests a prompt dismissal of the Charge.

## II.    ORGANIZATIONAL STRUCTURE AND COMPANY POLICIES

SSB is one of North America's largest bedding manufacturers. SSB's various brands have been leaders in the bedding industry for more than 220 years collectively. Among others, these brands include Serta, Beautyrest, Simmons, and Tuft & Needle.

SSB's principal place of business is 2451 Industry Avenue, Doraville, Georgia 30360. SSB takes pride in its commitment to its employees and customers. SSB goes out of its way to adopt and rigorously enforce policies that ensure equal employment opportunity and prohibit unlawful discrimination, including discrimination based on race and sex, including sexual orientation. These policies provide that employees who believe they have been the victim of discrimination or harassment should immediately notify their supervisor, their supervisor's supervisor, the head of their department, their local HR manager, and/or various other managerial personnel, including members of the legal department.   The Company also provides a hotline for employees to report suspected unlawful behavior. Furthermore, the Company strictly prohibits all forms of retaliation against individuals who avail themselves of SSB's procedures for reporting alleged discrimination or harassment.   Charging Party completed refresher training on these policies in September 2020.

## III.    RELEVANT FACTUAL BACKGROUND

SSB hired Charging Party on or about August 20, 2018, as a Senior Financial Planning Analyst. In this role, Charging Party was responsible for, in part, preparing budget reports and analysis, working with other divisions to understand financial performance, providing financial information at meetings, and supporting and developing annual and monthly budget forecasts. Charging Party originally reported to Paul Bartingale ("Bartingale"), Manager, Finance – Planning and Analysis. Zachery Kennedy ("Kennedy"), VP, Finance Sales, Financial Planning & Analysis, became Charging Party's direct manager in Spring 2020.

When he first began his SSB employment, Charging Party worked out of the Buckhead office in Atlanta, Georgia. Due to the COVID-19 pandemic, Charging Party transitioned to working fully remote in March 2020. Charging Party reportedly began to experience issues with the laptop computer that SSB had provided to him. Specifically, Charging Party complained that the device would freeze when using the Microsoft Excel program.

Mr. Derick Newton
February 16, 2022
Page 3

In an attempt to rectify the issue, on or about February 1, 2021, SSB's IT department replaced Charging Party's original device with a new computer. The IT department also informed Charging Party that his issue was likely a software issue, not a hardware issue. SSB's Finance Department uses very data-heavy Excel spreadsheets which can cause the program to run slowly. Additionally, the spreadsheets are often shared, and the program will slow down significantly if more than one user is working in the same spreadsheet. Importantly, these software issues do not affect a user's ability to use his laptop for other functions, such as email, calendar, or web browser.

Despite the new computer and knowledge of the likely reason for the issue, on July 13, 2021, Charging Party contended that he was "out of commission" due to the intermittent issues he was experiencing. Aware that IT was working with Charging Party to address the laptop issue, it also came to Kennedy's attention that Charging Party had failed to join meetings or respond to phone calls or scheduled conference calls. Even if Charging Party's laptop was completely malfunctioning, which was not at issue here, laptop issues would not have prohibited him from accessing his email, viewing his calendar, joining phone calls, and attending scheduled conference calls through his SSB-provided cell phone.[1]

For example, on July 19, 2021, Charging Party did not attend or call into a scheduled meeting. When the Senior Vice President of Sales texted Charging Party, Charging Party simply responded that his computer was still down, but he made no attempt to connect through his SSB cell phone. Additionally, one of Charging Party's job duties was to lead a monthly performance review. The July meeting was scheduled for July 21, 2021. Not only did Charging Party fail to attend the meeting, but he also did not cancel the meeting or notify the attendants that he would not be available.

On July 21, 2021, when Kennedy sent Charging Party an email directly instructing Charging Party to continue participating in meetings and phone calls, Charging Party did not respond. That same day, Kennedy contacted SSB's HR department to ask for guidance on how to address Charging Party's lack of communication. Kennedy told Senior Human Resources Generalist Angelica Bucki ("Bucki") that he had not spoken to Charging Party since July 15, 2021, Charging Party had missed several meetings and deadlines in the meantime, and Charging Party was not responding to text messages.

On July 22, 2021 at 9:23 AM, Bucki called Cameron on his SSB phone but was unable to leave a voicemail when Charging Party did not answer. At 9:24 AM, Bucki called

---

[1] To the Company's knowledge, Charging Party's SSB-provided cell phone was working properly. If it had not, Charging Party should have submitted a ticket to SSB's IT Department. SSB has no record of him doing so.

Mr. Derick Newton
February 16, 2022
Page 4

the number listed as Charging Party's home phone number in SSB's records, but the call could not be completed. At this point, as the Company had not heard from Charging Party for several days, Bucki began to become concerned that Charging Party might have suffered a medical emergency. Accordingly, at 12:40 PM, Bucki called the two numbers listed as Charging Party's emergency contacts and left voicemails.

At 3:02 PM, Charging Party called Bucki and proceeded to yell at her for calling his emergency contacts. Bucki explained that, due to Charging Party's failure to return contact efforts, the Company had become concerned about his welfare. Bucki and Charging Party talked about Charging Party's computer issues, and Bucki informed Charging Party that she would have a new laptop sent to him. Bucki also reminded Charging Party that SSB provides various benefits, including an employee assistance program, if he needed anything, but Charging Party did not indicate any interest. Puzzlingly, at 3:30 PM, Charging Party sent a group text message to several SSB employees, including Kennedy and Bucki, of an "inspiring video" that he wanted to share. The video was not work related.

On July 26, 2021, Charging Party sent a text message to Bucki confirming receipt of the replacement laptop. On July 27, 2021, Charging Party sent a text message to Kennedy and Bucki demanding an explanation regarding his mid-year review and potential promotion. During their conversations, Kennedy had asked Bucki for guidance on how to address Charging Party's failure to attend deadlines, meet deadlines, or respond to Company communications during work hours. Bucki had instructed Kennedy to document these performance issues in Charging Party's mid-year review, which was due on July 23, 2021 and became available for Charging Party to view online.

On July 28, 2021, then-Vice President of Corporate Human Resources, Mairo Akpose, contacted Charging Party to address Charging Party's concerns. Akpose attempted to discuss the Company's concerns with Charging Party's performance, but Charging Party failed to take any accountability. He accused Kennedy and Bucki of colluding against him and other employees of being liars. When Akpose informed Charging Party that his performance issues might result in discipline, he became further upset and defensive, yelling that it appeared that he and the Company needed to "go [their] separate ways." Based on this statement, Akpose accepted Charging Party's resignation. Thus, the Company's position is that he voluntarily resigned.

Mr. Derick Newton
February 16, 2022
Page 5

## IV.    RESPONSE TO CHARGE

### A.    Charging Party Cannot Demonstrate a *Prima Facie* Case of Discrimination.

Absent direct evidence,[2] to demonstrate a *prima facie* case of discrimination under Title VII, Charging Party must demonstrate that: (1) he is a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably than he was treated. *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

Even assuming *arguendo* that Charging Party can establish that he was qualified to do the job, which he cannot provided the above stated facts, he cannot satisfy the remaining three factors. First and foremost, SSB does not dispute that Charging Party is an African American man, as he self-identifies in his EEOC Charge. However, to the extent Charging Party's EEOC Charge includes a Title VII claim based on his sexual orientation, the Company does not concede that Charging Party can establish that he is a member of a protected class.[3]

Second, Charging Party did not suffer an adverse employment action because he voluntarily resigned when he stated to Akpose that he and the Company needed to "go [their] separate ways." *See Schofield v. Metropolitan Life Ins. Co.*, No. 3:CV-03-0357, 2006 WL 2660704, at *8 (P.D. Pa. Sept. 15, 2006) (finding that an employee voluntarily resigned when he left a meeting after saying, "Let me save you some time. I cannot deal with this right now. I'm out of here."); *see also Wilkerson v. Springfield Public School Dist. No. 186*, 40 F. App'x. 260, 263 (7th Cir. 2002) (holding that an employer refusing to allow an employee to rescind his resignation did not constitute an adverse employment action). All Akpose did is accept and implement Charging Party's voluntary resignation.

---

[2] Direct evidence is generally limited to "only the most blatant remarks, whose intent could be nothing other than to discriminate." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). Charging Party's EEOC Charge is devoid of such evidence.

[3] The EEOC Charge does not even specify Charging Party's sexual orientation, and the Company has no independent knowledge of Charging Party's sexual orientation. Furthermore, the two SSB employees with which Charging Party last had contact before his resignation—Bucki and Akpose—had no reason to be aware of Charging Party's sexual orientation. Their communications with him were limited to a few emails, Bucki's phone call with Charging Party on July 22, 2021, and Akpose's conversation with Charging Party on July 28, 2021. There was no reason for Charging Party's sexual orientation to be discussed during those two calls, and to the Company's knowledge, it was not.

Mr. Derick Newton
February 16, 2022
Page 6

Third, Charging Party cannot establish that SSB has treated similarly situated employees outside of his protected class(es) more favorably than he was treated. The EEOC Charge does not identify a single employee outside of Charging Party's protected class, much less one who was purportedly treated more favorable than him.

Moreover, even if Charging Party could establish a *prima facie* case of discrimination, which he cannot, SSB took action for legitimate, non-discriminatory reasons. SSB acknowledges that Charging Party states that he experienced technical difficulties with his laptop computer. The evidence demonstrates that SSB worked with Charging Party to resolve the technical difficulties that he stated he was experiencing, sending him two separate laptops and continuing to try to resolve the apparent issues. However, any issues Charging Party was having with his laptop computer do not excuse his utter failure to attend phone calls or meetings or otherwise communicate with his manager and business partners. It also does not excuse Charging Party's unprofessional conduct towards Bucki and Akpose when he yelled and ranted at them. Regardless of whether his separation is classified as a termination or voluntary resignation, Charging Party has not provided any basis for concluding that his race, sex, or sexual orientation played any factor in the outcome.

Furthermore, Akpose, who made the decision to accept Charging Party's resignation, is herself African American. Similarly, Kennedy, who was Charging Party's direct supervisor and agreed with the acceptance of Charging Party's resignation, is male. This further undermines Charging Party's allegation that his separation was pretext for racial or sex discrimination.[4] *Holston v. Sports Auth., Inc.*, 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000), *aff'd*, 251 F.3d 164 (11th Cir. 2001) (citing *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) ("As the Eleventh Circuit has noted, when the decision makers are in the same protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about."); *see also Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1153 (N.D. Ga. 1997) (noting that it would be difficult for the plaintiff to establish discrimination because the decision-maker who made all transfer decisions was of the same protected class as the plaintiff).

---

[4] Charging Party has not identified his sexual orientation, and therefore, the Company will not begin to speculate whether he and the relevant decision makers belong to the same protected class. However, SSB denies that Charging Party's sexual orientation was a factor in his separation.

Mr. Derick Newton
February 16, 2022
Page 7

**B.**    **Charging Party Was Not Constructively Discharged.**

"To prove constructive discharge, the employee[] must demonstrate that [his] working conditions were so intolerable that a reasonable person in [his] position would be compelled to resign." *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). In his EEOC Charge, Charging Party alleges that he was constructively discharged after he was denied a promotion and experienced computer issues. No reasonable person would find that those incidents created such an intolerable working environment that he is forced to resign.

**IV.    CONCLUSION**

For all the foregoing reasons, there is no cause to believe that Charging Party was discriminated against. Therefore, the Company respectfully requests that the EEOC issue a no cause determination and dismiss the EEOC Charge in its entirety.

Sincerely,

Megan L. Quinn

cc:    Timothy J. Holdsworth
       Clara DeQuick